## MORGAN v. THE STATE.

1. In an indictment for incestuous adultery, it is unnecessary to charge a common knowledge of the relationship, if the charge of knowing of the relationship is made against the party indicted.
2. Natural children are within the statutes defining the degrees within which marriage is prohibited.
3. In an indictment charging a father with living in adultery with his daughter, his confessions that she is so, are admissible in evidence.

Error to the Circuit Court of Barbour.

THE prisoner was indicted for the crime of incest, and convicted at the spring term, 1846.

The indictment charges, that the prisoner, on the 1st September, 1845, in the county of, &c. "being then and there the father of one Sarah Morgan, and within the degree of consanguinity within which marriages are by law declared to be incestuous, and void, and then and there knowing the said Sarah Morgan to be his daughter, did then and there live with said Sarah Morgan, in a state of adultery," &c. &c.

At the trial, no proof was made of a marriage between the prisoner and the mother of Sarah Morgan, but there was proof of his confession that she was his daughter. The court charged the jury, that the prisoner's confessions, and admissions, were competent to prove that Sarah Morgan was his daughter, and refused to charge, that to make out the offence charged in the indictment, an actual marriage between the mother of Sarah Morgan and the prisoner must be proved. The prisoner excepted.

A writ of error having been allowed by this court at its last term, he now assigns—

1. That the indictment is not sufficient to warrant a judgment.

37

2. That the court erred in the charge given and refused.

J. E. BELSER, for the prisoner, insisted—

1. That under the statute it is necessary for the indictment to charge a common knowledge of the guilty parties, of the relationship. [Dig. 432, § 6.]

2. It admits of question whether the statutory offence can be committed by parties who are not connected legitimately. [Ib. 374, § 8.] And therefore proof of a marriage in fact was essential. [Commonwealth v. Littlejohn, 15 Mass. 163; State v. Roswell, 6 Conn. 446.] Indictments like this bear a strong analogy to those for bigamy, and in those such proof is necessary. [Morris v. Miller, 4 Burr. 2057; State v. Read, 12 Verm. 399; 4 John. 53; 7 Ib. 314; Ford v. Ford, 4 Ala. Rep. 145.]

The ATTORNEY GENERAL, contra, insisted, no question arises in the bill of exceptions involving the marriage, if the crime of incest can be committed with a natural daughter. The statute evidently points to the relation, and not to its lawfulness. For moral and criminal purposes, a bastard has relations. [Queen v. Chafer, 3 Salk. 66.]

If, however, the legal connection between the parties as parent and child, must be sustained by a marriage of the prisoner with the mother of the female, then his admission was sufficient proof. [2 Russ. on Crimes, 644; 1 Greenl. Ev. 250; Roscoe's Crim. Ev. 35; Hawk. P. Cr. 13, 2 ch. 46, § 35; State v. Guild, 5 Halst. 153; Rex v. Eldridge, R. & R. 440.]

GOLDTHWAITE, J.—1. It is argued that this indictment is defective, because it omits to charge the female with knowledge of the relation between herself and the other guilty party. It is true, the statute defines the offence to be the living in a state of adultery of persons within the degrees of consanguinity, or relationship, whose marriages are declared by law to be incestuous and void, *knowing of such consanguinity*, but this, in our judgment, warrants no inference that the knowledge is to be common to both the parties, before the guilt of either can attach. If there can be an aggra-

Morgan v. The State.

vation in a crime like this, it would exist in the conceal-
ment of that knowledge, which, if communicated, might
have prevented its commission. The evident object and in-
tention of this clause in the statute is, to relieve the party ig-
norant of the relation from the severer penalty imposed on
persons living in adultery, when a relationship also exists
within the prohibited degrees. We are entirely satisfied the
indictment is good.

2. In the view we take of the statutes governing this
crime, it is entirely immaterial to ascertain whether the pris-
oner was, or was not married to the mother of the other par-
ty, if the fact was sufficiently established that she was his
child. The statute which defines the degrees of relationship
within which marriages are prohibited, declares, that if the
son shall marry his mother, or step-mother, the brother his
sister, the father his daughter, or his daughter's daughter,
&c. &c., such persons, so unlawfully married, shall be prose-
cuted by indictment, and on conviction, the court shall de-
clare the marriage null and void. [Dig. 374, § 6.] It would
be presuming very far to suppose the legislature intended
here to speak only of legitimate sons and daughters, and
brothers and sisters, when the offence against decency and
good morals, is the same, whether the ties are legitimate or
otherwise. It can scarcely be questioned, we think, that un-
der this statute, if it stood alone in our Digest, the courts
would feel compelled to declare a marriage void, between
the father, or mother, and his or her natural child, and if this
is not its effect, there never has been a time in this State
when a marriage between parents and illegitimate children
was not legal. Such a condition of society would be alike
at variance with the laws of God and man. In England,
the statute of 32 Henry VIII. prohibits all marriages within
the Levitical degrees, and under this it has been held, a man
could not legally marry his sister's bastard daughter. [Vin.
Ab. Marriage, F.]

3. Having ascertained that our statutes cover incestuous
marriages, and adulteries, between illegitimate, as well as le-
gitimate relations, within the prohibited degrees, it remains
to be considered whether the admissions of the prisoner were
competent to establish the fact of relationship, so far as he is

concerned. Of this we think there is no question, though an admission of this nature, not corroborated by other evidence, ought certainly to be acted on with great caution. The crime with which the admission is connected, is so revolting to natural propriety and decency, that it would seem almost incredible, and for this reason, if no other, a mere confession of the relationship ought not to produce a conviction. But we do not understand that this was all the evidence before the jury on this subject. The charge is, that the admissions were competent, and we are not prepared to say, they were otherwise.

We can see no error in the record. Judgment affirmed.