## CAMERON AND COOPER v. THE STATE.

1. Upon an indictment for living in adultery, the confessions of the party, of a previous marriage, are admissible to prove the fact of the marriage.

2. It being proved that one charged with living in adultery, four or five years before was living with a man, whom she admitted to be her husband, who since that time has removed, and has not since been heard of: Held, that the *onus* of proving he was dead, rested upon her.

3. Upon a trial upon an indictment for adultery, the witnesses must depose to facts, and cannot give an opinion as to the guilt of the parties charged.

Writ of Error to the Circuit Court of Barbour.   Before the Hon. J. D. Phelan.

THE plaintiffs in error were indicted for living together in adultery.   The only evidence offered to prove, that the defendant, Nancy Cooper, was a married woman, was the testimony of a witness, that some four or five years before the offence charged, she, and one John Cooper, were living together as man and wife, bore that relation to, and spoke of each other as husband and wife, and the witness heard her say she was married to John Cooper, since which time John Cooper has not been heard of, having removed.   There was no proof that he was living at the time of the commission of the offence charged in the indictment.

The defendant moved the court to charge, that this was not sufficient proof that Nancy Cooper was a married woman ; also, that the *onus* was on the State, of proving that John Cooper, or some other husband of Nancy Cooper, was living at the time of the offence charged.   The court refused to give these charges, and charged the converse.

The solicitor then proved by a witness, that in his opinion, the parties charged were living together in adultery.   The defendants moved the court to exclude this testimony, which the court refused, and they excepted.

These matters are now assigned as error.

Cameron and Cooper v. The State.

BUFORD, for plaintiffs in error, cited 3 Burns's Justice, 286; 1 Russ. on Crimes, 187, 270; Clay's Dig. 431, § 3; State v. Hinson and Watson, 6 Ala. 865; State v. Wallace, 9 N. H. 515; Corn v. Littlejohn, 15 Mass, 163; 1 Stephens's N. P. 6, 7; Greenleaf's Ev. 615, n. 4, 489, 490; Washington v. Cole, 6 Ala. 212.

ATTORNEY GENERAL, contra.

1. Admissions of party good evidence. *Any evidence* of the marriage good. It is only the inferences of a marriage, that the law rejects in criminal cases. 2 Greenl. Ev. 37-8; 7 Greenl. Rep. 57; 15 Mass. Rep. 161; 1 East's P. C. 337; 11 Ala. Rep. 289.

2. Marriage taking place in foreign country or state, admissions *clearly* good. This might have been proven in court below. Presumptions in favor of the ruling of that court. 7 Greenl. Rep. 60, *ut supra.*

3. No particular ceremony necessary, neither is a license or a priest necessary. Verbal agreement sufficient, even if no witnesses present. 6 Ala. Rep. 765.

4. Defendant Cameron does not suffer by the admissions of Cooper. If he had not been convicted of adultery, he would have been of fornication—punishment same; and the latter included in former. 6 Ala. Rep. 864; 2 Dallas, 124; 4 Iredell, 231.

5. John Cooper not absent from State long enough to raise presumption of his death, and until that time expires, *onus* lies on defendant to show his death.

6. The court has a right to hear the belief and impressions of witnesses in a peculiar case of this kind. 2 Greenl. Ev. 33; 3 Haggard, 123.

COLLIER, C. J.—Mr. Greenleaf says it has been doubted whether on an indictment for adultery, the defendant's admission of the marriage may be given in evidence against him, but he can perceive no good reason to distinguish it from other cases of admission. Hence, he concludes that any recognition of a person standing in a given relation to others, is *prima facie* evidence, against the person making such recognition, that such relation exists. 2 Greenl. on Ev. § 49,

and citations in notes. The supreme court of Maine said, that, while " we do not mean to say that the deliberate and unequivocal confession of a man charged with adultery, that he was then a married man, though married in this State, and without any corroborating circumstances, would not be sufficient for a conviction," it is unquestionable that such proof is sufficient, where the marriage takes place in another state or country. 7 Greenl. Rep. 57.

In The State v. Roswell, 6 Conn. Rep. 446, which was an indictment for incest, the question was, whether the admission of the defendant, that the victim of his lust was his daughter, and her mother his wife, with whom he had cohabited for many years, and even before the daughter's birth, was evidence of the fact of marriage. The majority of the court were of opinion, that in a prosecution for adultery, incest or bigamy, there must be evidence of a marriage *in fact;* an acknowledgment by the parties that they are thus united, coupled with cohabitation and reputation, are not sufficient evidence to establish it. The decision was rested mainly upon the judgment of *Lord Mansfield,* in Morris v. Miller, 4 Burr. Rep. 2057, and some American cases which have implicitly followed it. It was remarked that the conclusion was defensible upon the ground of precedent, even conceding it was arbitrary; and it was attempted to distinguish admissions in such case, from those, which are ordinarily made against one's interest, that they are not unfrequently prompted by selfish motives, and intended to justify the conduct and screen the offenders from censure and punishment. "Besides, a man, or woman, may verily suppose a marriage to have been consummated, when no lawful marriage ever took place. Ignorance of the law on this subject may be presumed in many cases, and confessions of a marriage made, without a knowledge of the requisites to constitute it such. In The People v. Humphrey, 7 Johns. Rep. 314, it was held, that the acknowledgment of a defendant charged with bigamy, that he was married as alledged, was not sufficient evidence against him of the first marriage; but there must be proof of a marriage in fact. The court merely cite Morris v. Miller, *supra,* and Birt v. Barlow, Doug. Rep. 171, a similar case, and recognize them without employing any reasoning of their own. See

also The Commonwealth v. Littlejohn and another, 15 Mass. Rep. 163; Kibby v. Rucker, 1 Marsh. Rep. (Ky.) 331; 2 Id. 392.

It seems to be an admitted rule, that the marriage may be proved in all cases, by persons who were present at the ceremony; and it is said that this species of evidence is considered better proof of the marriage than the record. 3 Phil. Ev. C. & H.'s Notes, 1147, 1043.

The opinion of Lord Mansfield, in the case cited, has not been implicitly followed, even in England. In Riggs v. Curgenven, 2 Wils. Rep. 395, which was an action for *crim. con.*, the court said, "if it were proved that the defendant had seriously or solemnly recognized, that he knew the woman he had lain with, was the plaintiff's wife, we think it would be evidence proper to be left to a jury." See als Bul. N. P. 28; 2 Stark. Ev. 36, 1st Am. ed.; Trueman's case, 1 East's P. C. 47. In Dickenson v. Coward, 1 B. & Ald. Rep. 679, *Lord Ellenborough* said, "I take it to be quite clear, that any recognition of a person standing in a given relation to others, is *prima facie* evidence against the person making such recognition, that such relation exists." See further, 2 Stark. Ev. 251, and note c. 6 Am. ed.; 1 Step. N. P. 11, and note b.

In Forney v. Hallacher, 8 Serg. & R. Rep. 159, Mr. Justice Gibson, in an opinion marked by his usual profoundness and accuracy of thought, and force and justness of expression, demonstrates most satisfactorily, that *Morris v. Miller* rests upon no just principle; and the cases which follow it, in our judgment are defensible upon no other ground than the exploded maxim, "the master said so." We cannot consent blindly to do homage to precedent at the expense of principle, and follow the guidance of a great mind, upon a question on which is destined to stand "solitary and alone." It is difficult to perceive of any reason for discriminating between admissions to prove a marriage, and other facts essential to constitute the legal guilt of the accused; and we therefore concur with those who have dissented from the celebrated judgment of Lord Mansfield. Morgan v. The State, 11 Ala. Rep. 289. The evidence must be submitted to a jury, who are to judge of its effect.

Proof of the death of any person known to be once living, is incumbent on the party who asserts the death; for it is presumed that he still lives until the contrary is shown; but after an absence of seven years, and not being heard from, it is said the presumption of the duration of life ceases. 2 Stark. Ev. 457, 1st Am. ed.; Crouch et ux. v. Eveleth, 15 Mass. Rep. 305; King et al. v. Paddock, 18 Johns. Rep. 141; Wambough v. Schank, 1 Penn. Rep. 229; Newman v. Jenkins, 10 Pick. Rep. 515. In Rex v. The Inhabitants of Twyning, 2 Barnw. & Ald. Rep. 386, it was conceded that the law presumes the continuance of life, yet in a case where this presumption comes in conflict with, and necessarily involves a presumption of crime, the former, which is the weaker, yields to the latter; and the party affirming that an individual is not dead, will be bound to prove it. Thus, on a question of settlement, where a woman, twelve months after the death of her first husband, was last heard of, married a second husband, and had children by him; it was held on appeal to the sessions, that the *onus* of proving that the first husband was not dead at the time of the second marriage, lay on the party who objected to such second marriage; for the consequence of presuming life would be that the woman had committed bigamy. Without stopping to scan with particularity the correctness of this decision, in a case to which the principle upon which it proceeds is appropriate; we think it is inapplicable to the case at bar. The evidence, with the exception of the fact of marriage, which would convict of *adultery*, would warrant a verdict of guilty of *fornication*, and the punishment for each is precisely the same—they are made by the statute, as in truth they are, associate and kindred offences. If then death were presumed, and no proof were adduced to countervail the presumption, still the defendants might, if the evidence of guilt were in other respects satisfactory, be found guilty, as we have seen of another offence, differing merely in name. They do not then stand in a predicament which warrants the reversal of the almost universal presumption; and consequently, the *onus* of proving the death of the husband of the defendant, Nancy Cooper, devolves upon them. The woman who could so far disregard the decencies and proprieties of life as to indulge her

lustful propensity, because she was released from the restraints of the marital vows, would not long hesitate if her husband were in life, about yielding to the embraces of a paramour. But however this may be, the scales of justice are not so nicely poised, as to discriminate the moral guilt of those whose practices are influenced by such considerations.

In Crewe v. Crewe, 3 Hag. Rep. 123, upon a petition for a divorce before Lord Stowell in an ecclesiastical court, at the instance of the husband against his wife, charging adultery, that learned judge said, "the court, though it cannot rely on the opinion of the witnesses, has a right to know their impression and belief, whether the crime was committed or not; and it is material that the examiner should understand that it is necessary the witness should be required to give this information." 2 Greenl. Ev. § 42. It may be that this mode of examining, should in such a case be tolerated. The opinion of the witnesses might greatly assist the chancellor in determining whether the offence was connived at, or whether there had been a condonation of it. In the case cited, the conclusion of the court seems to have been influenced by such testimony.

But the relaxation of this settled rule of evidence, has never been permitted upon the trial under an indictment for adultery. In such a case, witnesses must testify to facts, and the jury must consider them, and pronounce such a verdict as their opinion convinces them is proper. In permitting the witness to express his opinion and impression as to guilt of the defendants, the circuit court misapprehended the law. Its judgment is consequently reversed, and the cause remanded.