### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT COLUMBUS,

## JANUARY TERM, 1852.

Present—JOSEPH H. LUMPKIN, ⎫
  HIRAM WARNER, ⎬ Judges.
  EUGENIUS A. NISBET, ⎭

---

No. 10.—George W. Cook, plaintiff in error, *vs.* The State of Georgia, defendant.

[1.] If the indictment sets out the offence, in the language of the Penal Code creating it, or so plainly and distinctly that the Jury can clearly understand the nature of the offence, it is sufficient.

[2.] If a married man have criminal intercourse with his own daughter, she being a single woman, he is guilty of incestuous adultery, and she of incestuous fornication.

[3.] An indictment charges the offence to have been committed on a day certain, *and on divers days, before and after that time: Held,* that the words, *on divers days,* &c. may be rejected as surplusage.

[4.] The offence may be charged to have been committed on any day previous to the finding of the bill, and may be proven at any time, within the term of limitation.

[5.] The presiding Judge, upon determining certain motions to quash an indictment, said, that he had doubts about the law, and having such doubts, he would give the State the benefit of them; because the State was not allowed to carry the case to the Supreme Court: *Held,* that this remark was neither an error nor an irregularity.

[6 ] In prosecutions for bigamy, adultery or incestuous adultery : *Held,* that the admissions of the defendant, as to the fact of his marriage, are admissible in evidence, and that it is not necessary to prove a marriage in fact.

Indictment for incestuous adultery, in Marion Superior Court. Tried before Judge Iverson, September Term, 1851.

The indictment in this case alleged, that " George W. Cook, being a married man, in the County and State aforesaid, on the first day of May, in the year 1851, and on divers other days and times, before and after that day, did, then and there (and on said other days and times) commit divers acts of incestuous adultery, by cohabiting and having sexual intercourse with one Lucinda Cook, an unmarried woman; she the said Lucinda Cook, being then and there, the daughter of him, the said George W. Cook, contrary to the laws," &c.

On the trial, defendant's counsel moved to quash the indictment. 1st. Because it did not aver that Lucinda Cook was the legitimate daughter, of the whole blood, of the defendant, by her mother, to whom he was legally married.

2d. Because it alleges, " divers other times, before, &c." when it should aver and be confined to a particular date.

The Court overruled the motion, saying that he had doubts upon the question, and having such doubts, he would give the State the benefit of them; because the State was not allowed to carry the case to the Supreme Court. To this decision defendant excepted.

The State proposed to prove by defendant's admissions, that Lucinda Cook was his daughter, and that her mother was his lawful wife, to whom he had been legally married. Defendant's counsel objected, and insisted that the marriage should be proved by the record of the license and return thereon; and the mother identified by witnesses who were present at the marriage ; and that neither proof of cohabitation, reputation or confessions, nor all combined, are admissible, without proof of the marriage in fact; and that the alleged daughter is the legitimate offspring of such marriage.

The Court overruled the objection and admitted the evidence, and defendant's counsel excepted.

Counsel for defendant requested the Court to charge the Jury, that the law was as insisted on by counsel, as to the proof of marriage, &c. The Court refused so to charge, and defendant excepted.

On these exceptions error is assigned.

A. MORTON, for plaintiff in error.

Sol. Gen. WILLIAMS, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The indictment in this case was sought to be quashed, upon the ground "that it does not aver that *Lucinda Cook* was the legitimate daughter, of the whole blood, of the defendant, by her mother, to whom he was legally married." The motion to quash, was, as we believe, properly overruled by the presiding Judge. The rule of this Court, as to setting out the offence, is well settled: it is the rule which the Legislature has prescribed. If the indictment charges the offence in the language of the Code creating it, or so plainly and distinctly, that the Jury can clearly understand its nature, we hold it sufficient. The offence charged in this indictment is *incestuous adultery.* The Penal Code simply declares, that if any person shall commit incestuous fornication or adultery, such person so offending, shall, on conviction, be punished by imprisonment and labor, &c. The indictment avers that the defendant, being a married man, did, on the first day of May, 1851, and on divers other days, before and after that day, commit divers acts of incestuous adultery, by cohabiting and having sexual intercourse with one *Lucinda Cook*, an unmarried woman—she, the said *Lucinda Cook*, being then and there, the daughter of him, the said *George W. Cook*—contrary to the laws, &c. I do not see but that this description of the offence is quite sufficient to enable the Jury to understand the nature of it. They, as sensible, although unprofessional men, could not fail to see that they were

impanneled to try *George W. Cook* for the offence of *incestuous adultery*. They could not mistake it for any other offence. The charges are that he was, on a day named, guility, not of adultery, but *incestuous* adultery, by having *sexual intercourse with Lucinda Cook*, being then and there, his own daûghter; and that he was a married man.

What constitutes the crime of incestuous adultery? What are its elements? Marriage of the defendant, the fact of sexual intercourse, and the relation of the parties within the Levitical degrees; all of which are averred, and so plainly as to be issuable—so plainly, that the Jury are obliged to understand, that they are to find all the issues against the defendant, before they can find him guilty.

[2.] Another exception to the indictment was, that the facts charged make a case of incestuous *fornication*, and no conviction, therefore, could be had on it for incestuous *adultery*. Here the defendant is charged to be a married man, and the woman an unmarried female. The exception goes upon the idea that the crime of adultery is not complete, unless both parties are married. Such is not the law. If both are married, the connection would be adulterous as to both. Since one is married in this case, to wit, the defendant, his crime is incestuous adultery. The woman being unmarried, her crime is incestuous fornication. 1 *Yeates*, 6. 2 *Dall*. 124.

[3.] Again, the indictment was sought to be quashed, on the ground that it does not charge the offence to have been committed on a particular day. It is, no doubt, claimed to be uncertain, because, after charging the offence to have been committed, on a day certain, to wit, the 1*st day of May*, 1851, it proceeds to say, *and on divers other days and times, before and after that day*. These words may be rejected as surplusage, a day certain having been charged. See 2 *Mason's R.* 140. 1 *Starkie's Crim. Ple.* 235. *Rose vs. Redman*, 2 *Leach C. C.* 536. 1 *Ibid*, 127. Rejecting them, *time* is averred with sufficient certainty.

[4.] Any day previous to the finding of the indictment will do, except when time enters into the nature of the offence; and the offence may be proven on any day, within the period of

Limitations, dating back from the finding of the bill.  4  *Geo. R.* 341.  1  *Chitty's C. L. side page,* 224, '5.  1  *Stewart & Porter,* 208.  1  *Tyler,* 295.

[5.]  When the presiding Judge determined upon these motions to quash the indictment, he remarked that he had doubts about the law, and having such doubts, he would give the State the benefit of them ; because the State was not allowed to carry the case to the Supreme Court.  Counsel for the defendant below have brought this *remark* here as error.  This remark is no ruling ; it is the expression of a reason for ruling as he did ·against the plaintiff in error.  We are not disposed to treat it as an irregularity to be censured, much less as an error to be corrected.  It is to be feared, in these days of reform, that the Judges will be so strictly laced, as to lose all power of vigorous and healthful action.  I have but little fear of judicial power in Georgia so aggrandizing itself, as to endanger any of the powers of other departments of the government ; or to endanger the life and liberty of the citizen ; or to deprive the Jury of their appropriate functions.  The danger rather to be dreaded is making the Judges men of straw, and thus stripping the Courts of popular reverence, and annihilating the popular estimate of the power and sanctity of the law.  I am not, therefore, disposed to watch with great vigilance every act, phrase or sentiment, that may fall from the Court, with the hope of detecting an indiscretion, or fabricating an error.  Surely some discretion ought to be allowed to able, pains-taking, conscientious men, as to the *mere etiquette* of judicial procedure.  We are not inclined to regard this as an indiscretion, even, of which the plaintiff in error has any right to complain ; because, instead of prejudicing his rights' before the Jury, it would seem rather to be calculated to incline them towards acquittal'; that is to say, if such a remark, made in the hearing of the Jury, could have any effect at all, upon the mind of a conscientious Juror, which I seriously question, it would incline him, if he was not fully satisfied of his guilt, to acquit one, against whom the law had been ruled thus doubtingly. But what principle is violated in the remark ?  The reason given,

for affording to the State the benefit of the Judge's doubts, is a true one. The State, in criminal cases, cannot take the cause up; the defendant can. It was said in the argument, that the great and humane principle of the Common Law, that if there is reasonable doubt as to guilt, the prisoner shall be acquitted, was violated. We recognize this just and benevolent rule of conduct, as applicable to Jurors, when called upon to pronounce upon guilt or innocence. Nay, more; we hold that no just Judge will, or ought to be permitted, to rule a principle of law against any man, either in criminal or civil causes, against his paramount convictions. A Judge who would do this, is worthy of impeachment. But a Judge may doubt, whilst he gives judgment, with a preponderance of intellectual evidence in favor of his decision. Perfect assurance that he is right, cannot always be had. Decide the law he must—he has no volition in the matter. With doubt, or without doubt, it is his duty to decide every question of law which properly arises in a cause; and if he decides honestly, with the best energy of his intellect— with the best industry of his circumstances—and the best lights of his conscience—he is amenable to no tribunal, human or divine, for the error of his judgment. Is it expected that Judges are always to decide without doubt? If it is, it is a vain expectation. There are times when the ablest doubt, and good men and able Judges doubt oftener than the weak and unconscientious. "Fools rush in where Angels fear to tread!" One of the ablest, most conscientious, and most renowned of English Chancellors, Lord *Eldon*, was called the doubting Judge; yet, a great living Jurist has said of him, that his mind was never perplexed, but by the fear of doing injustice. And is it to be conceded that in criminal cases, a Judge must decide in favor of the prisoner, in all cases where he has doubts? I know of no such rule of judicial conduct. He ought not to decide in any case, but according to his convictions. If he has no doubts, very well. If he has doubts, but his convictions, notwithstanding, are against the prisoner, let him decide according to his convictions. Such, we consider to have been the position of *Judge Iverson*, in this case. We have no right to conclude

that the weight of his convictions was in favor of the prisoner, and that, notwithstanding this, he decided against him, because *he* could take the case up, and *the State* could not. We dare not presume such official depravity. The record warrants no such presumption; nor does any thing in the personal or official character of the man warrant it. The record and all other things, warrant this, to wit, that his convictions as to the law, were against the prisoner, but that he was not so clear, as to be without doubt; and in such a state of the matter, he would give to the State the benefit of his doubt. And in all this we find nothing wrong. 9 *Martin's R.* 355. *Ayliffe's Pand.* 6 2 *t.* 17. *Coke Lit.* 294. 2 *Inst.* 422. 2 *Dall. R.* 160. 1 *Yeates' R.* 443. *Nott & McCord,* 168. 5 *Johns. R.* 296, *top page.*

[6.] The Court admitted the admissions of the defendant, that the girl with whom he had the incestuous connection, was his daughter, and that her mother was his lawful wife. The admission of this evidence is excepted to. This question is not without difficulty. It may be considered doubtful, both upon principle and authority. Acknowledgments, co-habitation and repute, &c. in ordinary civil cases, prove marriage; but, it is said, in criminal cases—as in prosecutions for bigamy and adultery—a marriage in fact must be proved. Upon like principles, it is insisted that in this case—a prosecution for incestuous adultery—a marriage *in fact* must be proven; and that the admissions of the defendant are not competent. As a general rule, the confessions of a party, freely and solemnly made, are the highest evidence. So reasonable and well settled is this rule, that exceptions to it, to be sustained, ought to rest upon the most unassailable grounds. It is argued that a man ought not to be convicted upon confessions of a fact, which he may have been induced to make contrary to the truth, with the view of protecting himself from a criminal prosecution. That is, in this case, the admissions of the defendant, that he was married, may have been made with a view to prevent a prosecution for living in a state of adultery with his alleged wife, and therefore ought not to be admitted. If the admissions of this defendant were made after his connection with his daughter, he must be pre-

sumed to have made them with a knowledge of the fact that he was liable to prosecution for incestuous adultery, and also with a knowledge, that upon the trial of such a prosecution, it would be necessary to prove his marriage. In that event, his admissions are to be taken to be true, because made against his interest. If made *before* such connection, it can only be presumed that he made them contrary to the truth, in order to shield himself from a prosecution for adultery, upon the assumption that he was, in fact, living in a state of adultery. Such assumption, a Court has no right to make. He is, I think, rather to be presumed to have spoken truly; and upon his trial, if he spoke under a misapprehension, and was not lawfully married, he might defend, by showing that fact. Upon principle, we see no reason why this evidence should not go to the Jury, to be weighed by them, and respected in their verdict, for what it is worth, under all the circumstances of the case.

But one case was read directly applicable to the facts of this case. No more could be found; because, crimes of such revolting atrocity as incestuous adultery, to the credit of humanity, are exceedingly rare. The principle upon which the admissions are claimed to be excluded, is drawn mainly from the analogous cases of *bigamy, adultery and crim. con.* The first and the main English authority which seems to sustain the plaintiff in error, is *Morris vs. Miller, Burrow,* 2057. This was a case of *crim. con.* and the evidence relied upon to show the marriage of the plaintiff, was articles entered into after marriage, to settle the wife's estate, co-habitation, bearing the name of the plaintiff, and reception of the woman by every body, as the wife of the plaintiff. Lord *Mansfield* held it insufficient, saying, " we are all clearly of opinion that in this kind of action—an action for criminal conversation with the plaintiff's wife—there must be evidence of marriage in fact; acknowledgement, co-habitation and reputation are not sufficient to maintain this action." He put his ruling upon two grounds: " 1st. because *crim. con.* is a " sort of criminal action;" and 2d. because " it could not depend upon the mere reputation of marriage, which *arises* from the *conduct* or *declarations* of the *plaintiff himself.*" It is true,

that his Lordship also said, that in prosecutions for bigamy, a marriage, in fact, must be proved. Now it is clear, that the rule laid down as applicable to actions of *crim. con.* is right. The *plaintiff* shall not be permitted to make evidence for himself. Lord *Mansfield* would not permit him to do this, in *Morris vs. Miller*, and that is the extent to which the *judgment* goes, in that case. The other case relied upon in England, is *Birt vs. Bartow, Douglass*, 170, which was also a case of *crim. con.* and ruled by Lord *Mansfield*, in the same way and for the same reasons. Now, do not these cases stand upon different principles from the case at this bar? There the *plaintiff's* acts and admissions in his own favor, to make out his own case, were excluded; but here, it is the admissions of the *defendant*, made against his interest, and sought to be used by his adversary, the State, that we are asked to reject. They certainly do. The American cases are sustained upon the authority of these two English cases, and I believe none other from that quarter. At the same time, I concede, that according to the *obiter* of Lord *Mansfield*, in criminal prosecutions, a marriage in fact must be proven. In relation to the case of *Morris vs. Miller*, it is farther to be remarked, that the *admissions* of the defendant as to *the fact* of the plaintiff's marriage, were not ruled out. There was in that case some admissions by the defendant. He being surprised at a lodging with the plaintiff's wife, and asked where *Major Morris'* wife was, replied, " in the next room." This was holden insufficient, because it was only a confession of *the reputation* of the marriage. *See Buller's Ni. Si. Prius*, 28. In the case of *Rigs vs. Curgenven*, 3 *Wils. R.* 399, where the case of *Morris vs. Miller* was cited and considered, the Court say, " to be sure, the defendant saying in jest, or in loose rambling talk, that he had laid with the plaintiff's wife, would not be sufficient alone to convict him in that action (*crim. con.*); but if it were proved that the defendant had seriously or solemnly recognized that he knew the woman he had laid with was the plaintiff's wife, *we think it would be evidence proper to be left to the Jury, without proving the marriage.*" So, an admission on the record, in a previous judicial proceeding, of the validity of a first ma,-

riage, was admitted against the defendant, in a prosecution for bigamy. 1 *East. P. C.* 470, 471, '2. 2 *Chitty's Crim. Law,* 472, *notes. Chitty,* in a note to the title, " indictments for bigamy or polygamy," says, " any evidence seems to be sufficient, which will convince the Jury that an actual marriage was completed." 2 *Chitty C. Law,* 472, *note. Phillips,* commenting upon the case of *Morris vs. Miller,* writes, " this decision does not warrant the conclusion, that a distinct and full acknowledgment of the marriage, made by the defendant himself, will not be evidence of the fact, as against him, and sufficient to dispense with the more formal and strict proof of marriage." 2 *Phillips' Evid.* 210, 211. In the case of *Regina vs. Upton,* being an indictment for polygamy or adultery, the prisoner's deliberate declaration, that he was married to the alleged wife, was held sufficient evidence of marriage. 1. *C. & Kir.* 165, *note.* From this notice of the English decisions, it does not seem to us, that the Common Law, as we adopted it, contains a settled rule, that in prosecutions for bigamy or adultery, the admissions of the defendant, as to the fact of marriage, shall be excluded. We are not therefore required, by the Common Law, to adopt such a rule in the Courts of Georgia. We are at liberty to settle it here, there being no legislation upon the subject, according to our own views of principle and policy. If we seek counsel from the *American books,* we find them contradictory. In *Massachusetts,* it would seem, that the Courts are disposed to exclude all evidence of marriage, but the highest. 9 *Mass.* 492 *and* 15 *Ibid,* 163. In *New York,* it has been held, that in prosecutions for bigamy, the confessions of the party are not sufficient, but a marriage in fact must be proved. 4 *Johns. R.* 52. 7 *Johns. R.* 314. So also, in *Connecticut. See The State vs. Roswell,* 6 *Conn.* 446. See also, 1 *Marsh R.* 391. In *Pennsylvania,* the contrary rule obtains. 8 *Serg. & Rawl.* 159. See also, 7 *Greenl. R.* 57. 1 *Ashmead,* 272. 2 *Fairf.* 391.

Marriage, by the Common Law, entered into by persons competent to contract it, is valid, if the contract be made *per verba de presenti,* without cohabitation, or if made, *per verba de futuro,* and be followed by consummation. This doctrine of the Common Law

obtains generally in the States, unless altered by the Statute. There is nothing in our Statutes which repeals it. No form is prescribed for solemnizing marriage—no form of proof is required. Penalties are prescribed against persons who shall perform the ceremony without a license, or publication of banns, to which they would be answerable; but upon Common Law principles, such marriage would not be void for want of license or publication of banns in Georgia. It is manifest then, that if marriage in fact, must be proved, and contract alone is necessary to make a valid marriage, the contract must be proved. In cases (and they are most numerous) where the contract is not in writing, the marriage, if confessions are excluded, could be proved only by witnesses; and if a marriage, in fact, in criminal prosecutions, must be proved by the production of witnesses, the result would be, that many cases where proof of marriage is necessary to conviction, could not be made out. The witnesses could not be produced. They die, or in this wandering, unsettled age and country, are soon scattered to the inaccessible ends of the earth. These considerations demonstrate the policy, in our country, of the rule which we have adopted.

Let the judgment be affirmed.