[No. 2753.]

ASA DUMAS *v.* THE STATE.

1. BIGAMY—EVIDENCE.—Prosecution for bigamy cannot be sustained without proof of a prior valid marriage, as well as of a subsequent marriage pending the subsistence of the first; and the Penal Code of this State, in Article 328, enacts that "proof of marriage by mere reputation shall not be sufficient" in a trial for bigamy or unlawful marriage.

2. SAME.—But although general reputation alone is, therefore, not sufficient, yet, taken in connection with evidence of cohabitation and of the defendant's admissions, it is competent evidence to establish a *prima facie* case sufficient to support a conviction for bigamy, provided the jury were satisfied beyond a reasonable doubt of the fact of a valid marriage. Note in the opinion the collocation of authorities in support of this ruling.

3. "Valid Marriage" is a marriage solemnized with the legal prerequisites of and in accordance with the *lex loci contractus.* In Texas a license is a legal prerequisite, and the rites of matrimony must be performed by some one of the functionaries authorized by the statute to perform them; and, in a prosecution for bigamy or unlawful marriage, if the issue turn upon the validity of a marriage contracted in Texas since these prerequisites have been in force, that issue is dependent upon proof of them by legal evidence; which may consist of the original license and the return thereon, or of eye-witnesses to the marriage ceremony, or, as already indicated, of general reputation in connection with cohabitation, admissions of defendant, etc. See the opinion *in extenso.*

4. Bigamy—Charge of the Court.—In a trial for bigamy, therefore, it was error for the court below to charge the jury, in effect, that a valid marriage could be contracted by any agreement between the parties to be husband and wife, consummated by cohabitation, etc. For the erroneous instruction in full see the opinion in this case.

5. Evidence.—In rebuttal of the State's proof of his first marriage, the defendant introduced the woman alleged to be his first and lawful wife. She refused to testify, but at the instance of the defense was compelled to do so. *Held,* that she was a competent witness for the defendant, and, like any other witness, could be compelled to testify.

Appeal from the District Court of Smith. Tried below before the Hon. J. C. Robertson.

The indictment was presented September 17, 1881, and charged that Asa Dumas, the appellant, did, about June 10, 1881, "marry and take to wife one Dora Guy, a female woman, the said Asa Dumas being then and there an adult male person, and then having a former living lawful wife to whom he had been previously married, to wit, Polly Dumas; contrary to law and against the peace and dignity of the State of Texas." The trial was had at the February term, 1883, of the District Court, and resulted in the conviction of the appellant. A term of three years in the penitentiary was the punishment assessed against him.

M. H. Reed was the first witness presented by the State. He testified that he lived in Hamilton county, was twenty-five years old, and had known defendant ever since he, the witness, could recollect. The defendant was the step-father of witness, as the latter had always understood. Polly Ann Dumas was the mother of witness, as he had always understood. He was raised by her and the defendant, and had always called them "ma" and "pa." Witness understood that his father had died in the Confederate army. He did not know where the defendant and his mother and himself came from to Texas. They lived a while in Coman-

D1

che county, and several years in Hamilton county, on the head-right survey of the defendant. Two or three years previous to this trial the defendant left and did not return. Witness had a younger brother who always addressed the defendant as "pa." The defendant and Polly Ann kept house together, lived as husband and wife, attended meeting and went around in the neighborhood as husband and wife, and as such were recognized in the neighborhood where they lived. Witness never knew why the defendant left home. During all the life of the witness he had never heard or known that the defendant was not his stepfather. On cross-examination the witness stated that he had never heard the defendant call Polly Ann his "wife," nor she call him "husband."

J. P. Murphy, for the State, testified that he had lived near the defendant in Hamilton county for eight or ten years, and during that time had well known the defendant and Mrs. Polly Dumas. Until about two years previous to this trial the defendant lived with her as her husband. Witness had visited their home, had stayed there all night, and had eaten with them. As husband and wife they had often been at the house and with the family of the witness. On one occasion they remained about a week at witness's. At all times they acted towards each other as husband and wife. They slept together, and went and came together, as man and wife. She addressed him as "Mr. Dumas," and he called her "old woman," and sometimes "Polly." Witness was well acquainted with the general reputation in their neighborhood respecting their relation to each other. It was that they were husband and wife; witness never heard anything to the contrary. They lived on a quarter section of land which the defendant had pre-empted, and the two Reed boys always called them "pa" and "ma." On his cross-examination the witness did not remember that he ever heard the defendant call her "wife."

The State next introduced a marriage license issued May 2, 1881 by the county clerk of Smith county, and the return made thereon by a minister of the gospel. The license authorized the marriage of Asa Dumas to Dora Guy, and the return showed that the rites of matrimony between them were solemnized by the minister on May 3, 1881.

By the minister who performed the marriage ceremony, and by another eye witness of it, the State identified the defendant

as the "Asa Dumas" who, on May 3, 1881, was married to Dora Guy in Smith county; and with this proof the State closed.

The defense introduced the lady spoken of as Polly Ann Dumas. She declined to be sworn as a witness, but the defense insisted upon the court compelling her, and made the point that any prosecution of her for fornication or adultery was barred by limitation. She begged not to be forced to testify in the case; but the defense insisted, and the court forced her to testify.

To the defendant's question whether she was ever married to him, the witness replied: "No record of it can be found." Being then asked "Were you and defendant ever married," she, after some delay, replied "I reckon not lawfully."

On her cross-examination the following colloquy ensued between her and the counsel for the State. "Were you married in Georgia?" "No." "In Alabama?" "No." "In Mississippi?" "No?" "In Louisiana?" "No." "In Texas?" "No." "In Arkansas?" "No, in Tennessee." "Are you afraid of defendant?" "Yes, sir." "Did he not go to you in Hamilton county a few days ago, and tell you that if he was convicted there would be a hereafter about it?" "Yes, sir."

On her re-examination the defense asked, "Was there a ceremony performed between you and defendant?" "Yes, sir." "Who performed it?" "I don't know." "Who was present?" "Don't know." "Where was it at?" "Don't know—while we were traveling." "Who was present at the ceremony beside you and the defendant?" "Nobody." This concluded the evidence at the trial.

The motion for a new trial took exception to many parts of the charge given by the court to the jury, and among them to the clauses set out in the opinion of this court. A new trial being refused, the defendant appealed.

*Reaves & Dodd* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Our statute provides that "if any person who has a former husband or wife living shall marry another in this State, such person shall be punished by imprisonment in the penitentiary for a term not exceeding three years." (Penal Code, Art. 324.)

Again, it is provided that in trials for offenses constituting unlawful marriage, "proof of marriage by mere reputation shall not be sufficient." (Penal Code, Art. 328.)

In prosecutions for bigamy or unlawful marriage the prior marriage, according to the authorities, is in fact the *corpus delicti*, and the pressure in point of evidence generally relates to the first marriage. In *Hull* v. *The State*, 7 Texas Court of Appeals, 594, this court said, "a prosecution for unlawful marriage can be sustained only by allegation and proof of a prior valid marriage, and a subsequent marriage, the legal husband or wife being still alive."

As to what evidence is admissible, and what evidence is sufficient, to establish a prior valid marriage, there seems to exist a contrariety of opinion and decision in the books, and it is a question which has never been directly adjudicated in this State. A valid marriage must be proven, and our statute says "*mere reputation*" is not sufficient proof of the fact. Not that reputation is not admissible as evidence to be taken in connection with other proofs to establish the fact, but that, in and of itself alone and without other evidence, it is insufficient to establish the fact.

In civil actions for divorce the character and sufficiency of the evidence of former marriage has been before our Supreme Court on more than one occasion. Where a suit for divorce originated at an early day, and occurring on a state of facts at a time when the common law was not the rule of action as part of the law of the country, it was held that "cohabitation and common repute, as establishing a former marriage in countries governed by the common law, cannot be admitted as evidence in the courts of Texas to annul a subsequent marriage contracted here while Texas was a part of Mexico, and solemnized according to the laws which then governed this country." And in such case it was further held that "the production of a certified copy from the office of a county recorder in the State of Missouri of a certificate under the sign manual of a justice of the peace that he had solemnized such former marriage according to law, cannot be admitted as competent evidence to establish such foreign marriage to the exclusion of the domestic marriage, without due proof of the laws of that State relating to the subject matter." (*Smith* v. *Smith*, 1 Texas, 621; *Rice* v. *Rice*, 31 Texas, 174.)

After the common law became the rule of action, it was held

that "proof of general reputation, cohabitation of parties, and general reception as man and wife, was competent evidence in a suit for divorce." (*Wright* v. *Wright*, 6 Texas, 3.)

Our civil statutes provide for the celebration of the rites of matrimony in this State, requiring, also, a license therefor to be issued, the rites to be performed under the license by the parties only authorized in the statute, and the return and record of the license in the office of the clerk of the County Court. (Rev. Stats., Arts., 2838 *et seq.*) Proof of a domestic marriage, or one thus solemnized, may unquestionably be made by the record, or by a certified copy thereof. (Rev. Stats., Art. 2252.) This, however, is nowhere declared the only, or even the best, mode of making the proof in domestic marriages, or those which have taken place in our State. It is believed that even, in such cases, without the introduction of the record at all, the fact may be fully and completely established by the testimony of eye-witnesses who were present when the rites were solemnized. Where no rule of proof is expressly prescribed by statute, the marriage may be proven by parol.

Mr. Wharton says: "It may happen that the *lex loci contractus* may prescribe that no marriage shall be valid unless solemnized and recorded in a particular way, and it may happen, also, that the *lex fori* may prescribe that, in this respect, the *lex loci contractus* must have been shown to have been satisfied, to prove a marriage. Except in such cases, which are not likely to occur, a marriage may be proved by parol, and this is a rule of international law. This parol proof may be resolved into several ingredients. It may consist of the testimony of witnesses present at the ceremony. It may consist of proof of cohabitation and admissions." (Whart. Crim. Ev., 8 ed., sec. 170.)

Mr. Bishop says: "The common course of proof is to present the record evidence, and, with it, evidence to identify the parties, and these are *prima facie* sufficient. The testimony of persons present at the marriage is good evidence without the record, though the absence of the record may, under some circumstances, create suspicion." (Bish. on Statutory Crimes, sec. 610.)

Where the time and place of the first marriage are known, the rules thus announced clearly indicate the character and sufficiency of the evidence to be adduced. But in prosecutions for bigamy it happens, in a majority of instances perhaps, especially where the first marriage took place, as is generally the

case with bigamists, in some other State or country, that the prosecuting officer must be wholly ignorant of, and that it is impossible for him to find out, the time and place of the prisoner's first marriage, or the names and residences of those present at its consummation. Such avenues of information are generally endeavored to be concealed by the guilty party. Where they are thus concealed, and the prosecution has been unable to find, open up and produce them, what evidence *aliunde* must and can be produced to supply their places? We find, in a note to the case of *Taylor* v. *The State* (52 Miss., 84, reproduced in 2 Hawley's American Criminal Reports), the following apt observations on this subject by the editor. He says: "In some States it has been held, where, in a criminal case, it was found necessary to prove a marriage in order to convict a defendant of the crime with which he was charged, that all the essentials to a valid marriage must be strictly proved, as well as the law of the State or country where the marriage was celebrated; and, also, that the admissions of the defendant's cohabitation and reputation were not sufficient evidence of such marriage. But experience has proven that such a rule in the United States amounts, in a large number of cases, to a denial of justice. Our people are migratory in their habits, and very many of our foreign born citizens were married in the countries where they were born. To prove, in Missouri, a marriage which was celebrated in Bavaria, or even in Canada, within the rule adopted in some cases, is oftentimes an impossible task. Doubtless, on account of this difficulty, the rule has been modified, and the better doctrine now is that cohabitation, reputation and admissions are sufficient evidence of a legal marriage to submit to a jury." (Amer. Crim. Repts., Hawley, 2 vol., 17.) The doctrine and the opposing and conflicting authorities are all fully noted by the editor in his note.

Mr. Bishop says: "Record evidence and evidence of witnesses present at the ceremony will be required where these can be had. But where the circumstances of the particular case show that these cannot be had, and in all cases as confirmatory of them, and in the proper cases as dispensing with them, it *is* competent to show the admissions of the party or his prior cohabitation under pretense of marriage, and various other things of like import." (Bish. on Statutory Crimes, sec. 609.)

In *The Commonwealth* v. *Jackson*, 11 Bush., Kentucky, 679, where the question before the court was what proof of marriage

was admissible and sufficient in a case of bigamy, the court say: "The circuit judge seems to have been of the opinion that an indictment for bigamy could not be maintained without proof of the fact of two marriages, either by record evidence or by the testimony of one or more witnesses who were present at the solemnization of the marriage rites; or, in other words, that the declarations and conduct of defendant, admitting his marriage, and living with and recognizing the woman as his wife, were not sufficient to warrant the jury in finding a verdict against him. This is a subject about which there is irreconcilable conflict in the authorities. In Massachusetts, New York and Connecticut, and perhaps in some other States, it has been held that in prosecutions for bigamy an actual marriage of the prisoner must be proven, and that neither cohabitation, reputation, nor the confessions of the prisoner are admissible for that purpose, or, if admissible, are not of themselves sufficient to warrant conviction. (*Commonwealth* v. *Littlejohn* and *Barberick*, 15 Mass., 163; Boswell's case, 6 Conn., 446; *The People* v. *Humphrey*, 7 Johns., 314.) On the other hand, it has been held in South Carolina, Virginia, Georgia, Alabama, Ohio, Pennsylvania, Maine and Illinois that in prosecutions for bigamy the confessions of the prisoner deliberately made are admissible as evidence to prove marriage in fact, and in some of those States that such confessions are of themselves sufficient to authorize the jury to convict. (Britton's case, 4 McCord, 256; *The State* v. *Hilton*, 3 Richardson, 434; *Warner* v. *The Commonwealth*, 2 Va. Cases, 92; *Cook* v. *The State*, 11 Ga., 53; *Cameron* and *Cook* v. *The State*, 14 Ala., 546; *Wolverton* v. *The State*, 16 Ohio, 173; Murtagh's case, 1 Ashmead, 272; *Forney* v. *Hallacher*, 8 Sergt. & Rawle, 159; Cayford's case, 7 Greenleaf, 57; Harris's case, 2 Fair, 11 Me., 392; *The State* v. *Hodgkins*, 11 Me., 155; *Jackson* v. *The People*, 2 Scam., 231." See also *The Commonwealth* v. *Jackson*, 1 Amer. Crim. R., Hawley, 74.)

In *Miles* v. *The United States*, 103 United States Reports (13 Otto), 304, it was held by the Supreme Court of the United States that, "On an indictment for bigamy the first marriage may be proved by the admissions of the prisoner, and it is for the jury to determine whether what he said was an admission that he was actually and legally married according to the laws of the country where the marriage was solemnized." And, in addition to the cases cited above in Jackson's case, this last opinion cites *Regina* v. *Simmonsto*, 1 Car. & Kir., 164, cited in 1 Russell on

Crimes (Greaves's ed.), 218; Duchess of Kingston's case, 20 Howard's State Trials, 355; Truman's case, 1 East P. C., 470; *The State* v. *Libby*, 44 Maine, 469; Norwood's case, 1 East P. C., 470; *Regina* v. *Newton*, 2 Mood. & R., 503; *The State* v. *McDonald*, 25 Mississippi, 176; *The State* v. *Seales*, 16 Indiana, 352; *Quin* v. *The State*, 46 Indiana, 725; *Brown* v. *The State*, 52 Alabama, 338; *Williams* v. *The State*, 44 Alabama, 24. In *Langtry* v. *The State*, 30 Alabama, 536, it was held that in prosecutions for bigamy the first marriage may be proved by cohabitation and the confessions of the prisoner; and such evidence, if full and satisfactory, is sufficient to authorize a conviction without the production of the records or the testimony of a witness who was present at the ceremony.

It appears to us to be well settled from these authorities that general reputation, cohabitation, and admissions or confessions of the party are all admissible evidence of the fact of the first marriage. General reputation alone is insufficient, but, taken in connection with cohabitation and admission, is competent evidence to establish a *prima facie* case sufficient to sustain a verdict and judgment of conviction for bigamy. Whenever such evidence establishes in the minds of the jury, beyond a reasonable doubt, the existence of the fact of valid first marriage, then it is sufficient in that regard to sustain a verdict and judgment for bigamy. But, as stated in the outset of this opinion, a valid marriage must be proven, and if such evidence is relied upon it must establish the existence of a valid marriage to the satisfaction of the jury beyond a reasonable doubt.

In the case before us the learned judge charged the jury that "any mutual agreement between the parties to be husband and wife, especially when it is followed up by cohabitation and living together as such, if proven to the satisfaction of the jury beyond a reasonable doubt, would constitute a valid and binding marriage, whether there was issued any license or not, or whether there was a celebration of the rites of matrimony by a public marriage ceremony or not. The true criterion is, did the parties agree to be man and wife, and was that agreement carried out by their acts and conduct toward each other, by cohabitation, living together and recognizing each other as man and wife, and their conduct in society as such." This instruction was error. A valid, legal marriage is one which has been solemnized according to the mode and manner, and in accordance

with the prerequisites, which the law of the place where solemnized has required.

As we have had occasion heretofore to see, the laws of this State prescribe that a license shall be granted, and the rites be performed by some one of the officials named in the statute as being authorized to perform them. These are the legal requisites to a valid marriage in this State, and any other form, not in conformity with these requirements of the law, would be illegal and void in prosecutions for unlawful marriage.

On the trial of the case the defendant introduced the alleged first wife as a witness in his behalf, who declined to be sworn and to testify; but at the instance of defendant the court compelled her to testify. At common law the reputed first wife was not competent to prove the illegality of the first marriage. (Peat's case, 2 Lewin, 111; Bishop on Statutory Crimes, sec. 613.) Our statute provides that " Neither the husband or wife shall in any case testify as to the communications made by one to the other while married; nor shall they, after the marriage relation ceases, be made witnesses as to any such communication made while the marriage relation subsisted, except in a case where one or the other is prosecuted for an offense, and a declaration or communication made by the wife to the husband, or by the husband to the wife, goes to extenuate or justify an offense for which either is on trial." (Code Crim. Proc., Art. 734.)

And again: "The husband and wife may in all criminal cases be witnesses for each other, but they shall in no case testify against each other, except in a criminal prosecution for an offense committed by one against the other." (Code Crim. Proc., Art. 735.)

Under this latter article, 735, we are of opinion that the wife is a competent witness in behalf of her husband on the trial of any criminal prosecution against him, bigamy or unlawful marriage not excepted. If competent to testify, then she can be forced to testify, as any other witness may be. In some States the rule is that the lawful wife is a competent witness against defendant to prove the marriage between her and defendant. (*The State* v. *Bennett*, 31 Iowa, 24; *The State* v. *Sloan*, 55 Iowa, 219; *The State* v. *Hughes*, 58 Iowa, 165.)

We deem it unnecessary to notice the other points discussed in appellant's brief. For error in the charge of the court, above indicated, the judgment is reversed and the cause remanded in

order that a new trial may be had in conformity with the law as herein enunciated.

*Reversed and remanded.*

Opinion delivered June 20, 1883.