EDMUND J. LOWRY, Appellant, *v.* THE FARMERS' LOAN AND TRUST COMPANY, Trustee, and Others, Respondents.

*Stock dividends — when declared from profits, they go to the life beneficiary of a trust, not to the remaindermen.*

The will of a testator gave three separate shares of his estate to the "Farmers' Loan and Trust Company, in trust, to receive the rents, issues and profits thereof and to apply the same (of one share) to the use of each one of my children who may survive me, during the natural life of such child, and after the death of each child, to pay over the principal of such trust fund to the right heirs of such deceased child. * * *

"*Eleventh.* * * * When any investment of trust funds has been made by purchase of securities, such securities shall form part of the principal of the trust fund and follow the trust; and the entire income from such securities shall be applied as income, irrespective of the price paid for the securities, or the subsequent value thereof; it being my will that no part of such income

shall be diverted to form.a sinking fund to replace any loss to the principal by depreciation in value of the securities."

*Held*, that a stock dividend, declared out of undivided ·profits or surplus (a portion of which was earned before the testator's death), upon stock of a corporation set apart by the trustee as a portion of one of the trust funds created by the will, belonged to the life beneficiary of the trust and not to the remaindermen..

That such a dividend must be treated as a cash dividend, dividing surplus earnings of the corporation among the stockholders who have used the same in the purchase of its stock.

APPEAL by the plaintiff, Edmund J. Lowry, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York, on the 10th day of August, 1900, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits.

*Clinton E. Bell*, for the appellant.

·*David McClure*, for Farmers' Loan and Trust Company, respondent.

*Alfred Roelker, Jr.*, for Muriel Valentine, an infant, respondent..

McLAUGHLIN, J.:

This action was brought for the construction of certain clauses of the will of John Lowry, deceased, and for an accounting by his executor and trustee. The real question, however, which is presented by the appeal is whether a certain stock dividend declared by the Pullman Palace Car Company upon its capital stock belongs. to the life tenant or to the remaindermen.

The facts are undisputed. Upon the trial it appeared that on the 26th of January, 1895, Mr. Lowry died, leaving a will and codicil, which were admitted to probate, and letters testamentary issued to the Farmers' Loan and Trust Company, the ·executor and trustee therein named, which qualified, entered upon the discharge of its. duties, ever since has been, and now is acting as such; that at the time of Mr. Lowry's death he was the owner, among other securities, of fifty shares of the capital stock of the Pullman Palace Car Company, which company then had a capital stock of $36,000,000, divided into shares of the par value of $100 each, and it also then had undivided profits amounting to upwards of $25,000,000; that

the trust company, acting under the provisions of the will creating the trust, divided the trust estate and set apart for the plaintiff, one of the children of the testator, among other securities, eight shares of the capital stock of the Pullman Palace Car Company, upon which it paid to him, up to October, 1898, all of the cash dividends declared by the Pullman Company payable to the holder of such shares, including an extra dividend of twenty per cent. In October, 1898, the Pullman Company, out of the undivided profits or surplus which it then had, amounting to about $20,000,000, declared a stock dividend of fifty per cent, payable on the fifteenth of November following, and four of such shares were on the latter date delivered to the trust company. The plaintiff claims such shares, and the trust company having refused to deliver the same to him, upon the ground that they belong not to him, the life tenant, but to the remaindermen, this action was brought, the object of which is really to determine the title to the same.

So much of the will of the testator as seems to be pertinent to the solution of the question presented reads as follows:

" *Seventh.* I direct my executor to set apart one-fourth part of the rest, residue and remainder of my estate, real and personal, wheresoever situate, of which I may die seized, and said one-fourth part I give, devise and bequeath to the Farmers' Loan and Trust Company, a body corporate of the State of New York, in trust, to receive the rents, issues and profits thereof and to apply the same to the use of my wife, Louisa L. Lowry, until her death or remarriage, and on her death or remarriage, then the said portion of my estate so held in trust for her shall go to increase the portion of my estate held in trust for the benefit of my children, as hereinafter stated.

" 2. The rest of my residuary estate I direct my executor to divide into as many portions as I may leave children or issue of deceased children me surviving, making such division *per stirpes*, and counting the children of any deceased child of mine as one. One of said shares I hereby devise in trust for the benefit of each one of my children who may survive me, that is to say, I give, devise and bequeath the same to the Farmers' Loan and Trust Company, in trust, to receive the rents, issues and profits thereof and to apply the same to the use of each one of my children who may survive me, during the natural life of such child, and after the death of each

child, to pay over the principal of such trust fund to the right heirs
of such deceased child.   *   *   *

"*Eleventh.*   *   *   *   When any investment of trust funds has
been made by purchase of securities, such securities shall form part
of the principal of the trust fund and follow the trust; and the entire
income from such securities shall be applied as income, irrespective of
the price paid for the securities, or the subsequent value thereof; it
being my will that no part of such income shall be diverted to form
a sinking fund to replace any loss to the principal by depreciation
in value of the securities."

The learned justice sitting at Special Term, after a trial had,
reached the conclusion that the plaintiff, the life tenant, was not
entitled to this stock dividend; that it belonged to the remainder-
men, and he, therefore, dismissed the complaint upon the merits,
and from the judgment thereafter entered in accordance with his
decision, the plaintiff has appealed.

We are of the opinion that the learned justice erred in the con-
clusion reached by him.   The testator intended that the plaintiff —
one of his children — should, during his life, receive the *entire*
"rents, issues and profits" of that portion of the estate set apart for
his benefit.   The will so declares, and the 11th clause simply adds
emphasis to that intent.   The provision there is, that the entire
income from such securities "*shall be applied as income, irrespec-
tive of the price paid for the securities or the subsequent value
thereof.*"   Nothing is to be diverted to form a sinking fund or to
replace any loss to the principal by depreciation in the value of the
securities.   Mr. Lowry's legal interest in the Pullman Company, when
he died, consisted of the fifty shares of stock held by him.   He had
no control over the surplus, out of which the stock dividend or
some portion of it was subsequently paid.   He could not have com-
pelled a division of this surplus so long as the directors refused, in
good faith, to make a division of it.   The legal title to the surplus
was in the corporation, and the directors — to whom the statute had
committed the management and business of the affairs of the corpo-
ration — alone could direct a distribution among the stockholders, and
if they refused, failed or neglected in this respect the stockholders
were powerless, unless they could show that such surplus was not
required in the prosecution of the business of the corporation or that

the directors acted in bad faith. Until such facts had been established the stockholders of the corporation had no legal interest in the surplus and could not have maintained an action at law to compel a distribution of it. (*Greeff* v. *Equitable Life Assurance Society*, 160 N. Y. 32, and cases cited; *Burden* v. *Burden*, 159 id. 287.) The board of directors, at any time after the death of Mr. Lowry, could have declared a dividend sufficiently large to have exhausted the surplus if the same existed in cash, and if such dividend had been payable in cash no one would have seriously contended but that the plaintiff would have been entitled to it, to the entire exclusion of the remaindermen. The law seems to be well settled, in this State at least, that a cash dividend is *income*, and goes to the life tenant, no matter at what time the profits from which the dividend is declared may have accrued or have been accumulated. (*Matter of Kernochan*, 104 N. Y. 618; *Matter of Rogers*, 22 App. Div. 432; S. C. affd., 161 N. Y. 108.) The Pullman Company, instead of making a cash dividend, made a dividend payable in stock, which, as a matter of fact, represented either betterments, additions to the property acquired by the corporation, or cash held by it, a dividend which represented additional capital involved in the business of the corporation which had been accumulated from time to time from its net earnings not divided when the same were made, but appropriated by the corporation for the prosecution of its business. The stock dividend thus made was, in effect, as though the corporation had increased its capital stock, divided the surplus earnings in cash among its stockholders, and the stockholders had taken the cash and purchased the stock. Such a dividend in principle must be considered the same as a dividend in money among the stockholders respectively entitled thereto, and, if this be true, then a stock dividend having for its basis and representing the surplus earnings of a corporation, must be treated as though such surplus earnings had been divided among the stockholders and the cash actually paid to them, and held to belong to the life tenant and not to the remaindermen.

This is the rule, as we understand it, adopted by the Court of Appeals in *McLouth* v. *Hunt* (154 N. Y. 179) and *Matter of Rogers* (161 id. 108). The syllabus in the *McLouth* case, which seems to express the conclusion of the court so far as it relates to the question here presented, is, "when a stock dividend declared by

a corporation and allotted to shares of its original capital stock, belonging to a testamentary trust estate, constitutes, as matter of fact, a distribution of accumulated earnings or profits, it represents income and belongs to the life tenant of the trust estate, as between him and the remainderman." And the expression of the court in the *Rogers* case is substantially to the same effect. There the question of a stock dividend was not directly involved, the issue presented being between the life tenant and the remaindermen as to their respective interests in the distribution of the assets of a corporation made upon its final dissolution, and the court held that it was permissible in such case to show what, if any, portion of the sums distributed proceeded from profits and what from capital, to the end that the profits might be allotted to the life tenant, and the capital of the corporation held for the remaindermen.

Many authorities have been called to our attention in the briefs submitted, but the two referred to seem to be decisive and controlling upon this court. (See, also, *Clarkson* v. *Clarkson*, 18 Barb. 646; *Riggs* v. *Cragg*, 26 Hun, 89.)

Our conclusion, therefore, is that the stock dividend of fifty per cent declared upon the capital stock of the Pullman Palace Car Company, four shares of which were allotted to the eight shares held by the trust company in trust for the benefit of the plaintiff, is, according to the intent of the testator, "income" and belongs to the plaintiff absolutely, and that the same should be delivered to him by the trustee, and that the learned trial justice, in reaching the opposite conclusion, erred, for which reason the judgment appealed from must be reversed and judgment rendered for the plaintiff, with costs in all the courts to be paid out of the principal of the estate.

VAN BRUNT, P. J., O'BRIEN, INGRAHAM and HATCH, JJ., concurred.

Judgment reversed and judgment rendered for the plaintiff, with cost in all the courts to be paid out of the principal of the estate.