## 76273. GLISSON v. THE STATE.
(372 SE2d 462)

SOGNIER, Judge.

Appellant was convicted of incest and cruelty to a child, and he appeals.

1. Appellant contends that the offense of incest cannot be committed between a "stepgrandfather" and his "stepgranddaughter," and therefore it was error to deny his motion for a directed verdict of acquittal as to that offense. We agree.

"The prohibition against intermarriage or carnal knowledge between persons related by consanguinity, unless expressly extended by statute, applies only to those related within the Levitical degrees [*Cook v. State*, 11 Ga. 53], or if certain relations are specified by the statute, only to such relations. The question, however, is generally regulated by statute, a common provision being that in order to constitute the crime the parties must be related to each other in some degree within which marriage is prohibited." 42 CJS, Incest, § 3a.

Consanguinity is defined as: "Kinship; blood relationship; the connection or relation of persons descended from the same stock or common ancestor. Consanguinity is distinguished from 'affinity,' which is the connection existing in consequence of a marriage, between each of the married persons and the kindred of the other." Black's Law Dictionary, Special Deluxe Fifth Edition, p. 275. "There is a clear and just moral difference between the marriage or sexual intercourse of persons related by consanguinity [blood] and that of persons related only by affinity, and hence a statutory prohibition expressly relating to degrees of consanguinity will not by implication extend to degrees of affinity, . . . Affinity within the meaning of statutes against incest *does not arise* between one of the parties *to a marriage and a person related only by affinity to the other party.*" CJS, supra, § 3b.

OCGA § 16-6-22 (a) provides: "A person commits the offense of incest when he engages in sexual intercourse with a person to whom he knows he is related either by blood or by marriage as follows: (1) Father and daughter *or stepdaughter*; (2) Mother and son *or stepson*; (3) Brother and sister of the whole blood *or of the half blood*; (4) Grandparent and grandchild; (5) Aunt and nephew; or (6) Uncle and niece." (Emphasis supplied.) Thus, the Georgia statute, while prohibiting sexual relations between *certain* persons related only by affinity, does not include the stepgrandfather-stepgranddaughter relationship

in its definition of incest. It has always been the law that criminal statutes must be strictly construed against the State, *Mitchell v. State*, 239 Ga. 3 (1) (235 SE2d 509) (1977), and since the statute does not include a prohibition against sexual intercourse between a "stepgrandfather" and "stepgranddaughter," it is excluded under the maxim *expressio unius est exclusio alterius*.

"The fact that the . . . sexual act[s] here involved [are] fully as loathsome and disgusting as the acts proscribed by the Code does not justify us in reading into the statutory prohibition something which the General Assembly either intentionally or inadvertently omitted." *Riley v. Garrett*, 219 Ga. 345, 347-348 (1) (133 SE2d 367) (1963). Since the relationship between appellant and the alleged victim is not one which is expressly enumerated in the statute, any sexual relationship between them would not be incestuous. Accordingly, appellant's conviction of incest must be reversed.

2. Appellant alleges it was error to allow witnesses to testify as to what the alleged victim told them. In this regard the alleged victim, who was sixteen at the time of trial, invoked her privilege not to testify under the provisions of OCGA § 24-9-27 (a), on the ground that her testimony would tend to bring disgrace or public contempt upon her family. She invoked this privilege three times, and refused to testify despite the court's ruling that she must testify. The trial court then allowed a school counselor, a former GBI agent, and the victim's mother and stepfather to testify, over a continuing objection, as to what the victim told them about the offenses charged. The State offered such testimony on the ground that it was to explain conduct, and the court admitted it on that ground. Thus, appellant's conviction is based entirely on hearsay testimony. OCGA § 24-3-16 is not applicable here, because the alleged victim was not under the age of fourteen at the time she made her statements.

In *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982), two detectives had been allowed to testify at trial, on the ground that it was to explain conduct and motive, that a woman, since deceased, had told them she had been abducted and raped repeatedly by two men, one of whom was the defendant. The Supreme Court held, however, that such testimony was offered to prove that the victim had been raped and that the defendant had committed the rape. The court also held that such testimony was hearsay and inadmissible under Code Ann. § 38-302 (now OCGA § 24-3-2) to explain the detectives' conduct or motives, since their conduct and motives were not matters concerning which the truth must be found. Here, as in *Momon*, it is clear that the purpose of the admitted testimony was not to explain the witnesses' conduct, but to prove the truth of what the victim had told them, i.e., that appellant had committed the offenses charged. Thus, such testimony was inadmissible hearsay, and it was error to

allow such testimony. Id. at 867. See also *Parker v. State*, 162 Ga. App. 271, 274-275 (290 SE2d 518) (1982). "If the hearsay rule is to remain a part of our law, then OCGA § 24-3-2 . . . must be contained within its proper limit." *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984).

We do not find the "necessity" exception to the hearsay rule, set forth in OCGA § 24-3-1 (b), applicable under the facts of this case. That exception applies only when the witness is *unavailable*, usually because of death or in cases where the witness may not be compelled to testify, as in the case of a wife who cannot be compelled to testify against her husband. Our Supreme Court has established that "a witness cannot refuse to testify relative to material matters concerning a crime committed by a member of [her] family on the basis that [her] answer would bring disgrace, infamy or public contempt upon [her] or [her] family." *Thomas v. State*, 245 Ga. 688, 691 (4) (266 SE2d 499) (1980). See also *Brown v. State*, 242 Ga. 536, 538 (3) (250 SE2d 438) (1978). Thus, the alleged victim in this case could not invoke privilege on this ground and could have been compelled to testify. Since her testimony was compellable, appellant has been deprived of a trial in which the victim's testimony would be immediately, rather than intermediately, before the jury for its evaluation, and she would be subject to cross-examination. The result of the court's failure to compel the witness to testify was that it allowed inadmissible evidence to be presented to the jury, and admissible evidence was shielded from its consideration.

Two wrongs do not make a right, and the failure of the trial judge to compel the alleged victim's testimony should not sanction the consequent admission of hearsay testimony. That is reversible error for two reasons. First, the victim's testimony would be direct evidence that either the offenses charged occurred or they did not occur. Second, appellant's accuser would face him and be subject to cross-examination, thereby giving appellant his constitutional right to confront the witness against him. *Higgs v. State*, 256 Ga. 606 (351 SE2d 448) (1987), is not applicable here, for in *Higgs* the failure of the wife of the defendant to testify was based on the exercise of her privilege not to testify against her husband, rather than on any privilege pursuant to OCGA § 24-9-27 (a) and thus, she could not be compelled to testify.

We are unaware of any other exception to the hearsay rule which would make the testimony of the witnesses admissible. The victim's statements were not part of the res gestae, they did not constitute fresh complaint, nor were they spontaneous exclamations made shortly after the offenses charged were allegedly committed, since the acts of incest allegedly occurred over a period slightly in excess of one year. On the contrary, the initial statement to the school counselor

was made after a student informed the counselor she should talk to the victim about her relationship with her grandfather. All statements by the victim were the result of questioning by the various witnesses, and were not made voluntarily by the alleged victim. Even assuming, for the sake of argument only, that the testimony of the witnesses was admissible, hearsay testimony ordinarily is wholly without probative value, and even when introduced without objection, such testimony alone cannot establish a fact in issue. *Jones v. State*, 50 Ga. App. 97 (1) (176 SE 896) (1934); *Collins v. State*, 146 Ga. App. 857, 860 (1) (247 SE2d 602) (1978). Hence, it was error to allow the hearsay testimony of the witnesses under the facts presented here, and the conviction is reversed.

3. In view of our decision in Divisions 1 and 2, it is unnecessary to address appellant's remaining enumerations of error.

*Judgment reversed. Birdsong, C. J., Banke, P. J., Carley and Beasley, JJ., concur. Deen, P. J., McMurray, P. J., Pope and Benham, JJ., dissent.*

POPE, Judge, dissenting.

1. I dissent from the holding that Georgia's incest statute does not apply to the relationship of stepgrandparent and stepgrandchild. OCGA § 16-6-22 provides, in pertinent part: "A person commits the offense of incest when he engages in sexual intercourse with a person to whom he knows he is related either by blood *or by marriage* as follows: . . . grandparent and grandchild . . . ." (Emphasis supplied.) By expressly providing for relation by marriage, the Georgia incest statute applies to relation by affinity (marriage) as well as by consanguinity (blood). By definition, relation by marriage applies to relations "in-law" and "step" relations. Thus, each of the relationships set forth in OCGA § 16-6-22 (a) includes relationships "in-law" and "step" relationships, including grandparent and grandchild, as set forth in subsection (a) (4). The evidence in this case shows defendant was the father of the victim's stepfather, with whom she lived. Defendant was, by marriage, the victim's grandfather and the relationship between defendant and victim is covered by the Georgia incest statute.

The opinion of the majority concerning the requirement of Levitical degrees of relationship is inapplicable. In 1852, when *Cook v. State*, 11 Ga. 53 (56 A.D. 410) (1852) was decided, Georgia's penal code did require the parties to be related by Levitical degrees. Laws 1833, Cobb's 1851 Digest, p. 814. However, in the 130 years since *Cook*, the incest statute has been revised. It now sets forth six specific relationships for which sexual intercourse is prohibited, whether the relationship is "by blood or by marriage." OCGA § 16-6-22 (a). The majority's scholarly discussion concerning the distinction between re-

lation by consanguinity or affinity is also not instructive, for Georgia's incest statute includes relationships by marriage. Our statute applies to relationships of both affinity and consanguinity.

The only other case of which we are aware in which a court has considered whether the relationship between stepgrandparent and stepgrandchild is subject to an incest statute was decided by the Court of Appeals of the State of Washington. In *State of Wash. v. Handyside*, 42 Wash. App. 412 (711 P2d 379) (1985) the Washington incest statute was held not to apply to the relationship. However, the Washington incest statute, Wash. Rev. Code Ann. § 9A.64.020, varies significantly from the Georgia incest statute. By Washington statute, sexual contact is forbidden with those related as a "descendant," a term defined to include stepchildren but not stepgrandchildren. Moreover, the Washington statute does not apply to relationships by marriage. Because of the statutory differences between the two states, the holding of the Washington court is not applicable to the facts of the case at hand.

I find no merit in defendant's argument that the relationship of stepgrandchildren is implicitly left out of the Georgia incest statute because the relationship between father and stepdaughter and mother and stepson was expressly included. We cannot ignore the express inclusion of any relationship by marriage, which applies to each of the relationships enumerated in the statute. See subsections (a) (1) through (6) of OCGA § 16-6-22. Thus, I would affirm the conviction of incest.

2. I agree with defendant that the testimony concerning the victim's statements to others was not admissible to explain the conduct of those investigating the accusations. See *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982). However, this case is not governed by *Momon*. Instead, it is squarely ruled by *Higgs v. State*, 256 Ga. 606 (351 SE2d 448) (1987), which recognizes an exception to the hearsay rule for the statement of a necessary witness (in *Higgs*, the eyewitness; in the case now before us, the victim) when the witness invokes a privilege not to testify and the circumstances surrounding the witness' statement guarantee its trustworthiness.

The necessity of the testimony at issue in this appeal is obvious from the refusal of the victim to testify, despite the court's repeated instruction to do so. The specific circumstances involved in this case guarantee the trustworthiness of the statements made by the victim to others. The victim related identical or similar statements to four adults: her school counselor, her stepfather, her mother and a GBI agent. Moreover, the record reflects she testified before the grand jury which indicted defendant. Certain aspects of her statements were corroborated by physical evidence or the direct testimony of other witnesses (e.g., her statement that the sexual activity occurred after

school and on weekends while her parents were away from home was corroborated by the testimony of her siblings and a neighbor who testified defendant regularly visited the victim's house at these times and locked the other children out of the house or out of the victim's bedroom; her statement that defendant blocked the door to her bedroom with a stick was corroborated by the introduction of a stick matching her description which was found in her bedroom). As in *Higgs*, the victim did not testify contrary to the statements made to the four adults nor was any evidence presented that she ever disavowed her statements or claimed they were inaccurate or untrue. The victim appeared before the trial jury and, in response to questioning, read a statement invoking her privilege not to testify. Therefore, the jury was in a position to evaluate the witness' trustworthiness, sincerity or motive and to form a belief as to whether the witness could be trusted to tell the truth to others in private even though she was unwilling to testify in public.

The victims of sexual offenses against children are young, vulnerable and often dependent upon the accused. The very nature of the relationship between the victim and the accused creates a dilemma for the child subpoenaed to testify. The victim, often the only witness able to establish the evidence necessary for conviction, may be intimidated into silence out of fear of reprisal. The "personal or family disgrace" privilege does not extend to testimony material to the issues of the case and the witness may be required to testify (See Division 2 of the majority opinion, supra). Nevertheless, due to the youth and vulnerability of the witness the trial judge, as here, may be reluctant to hold the witness in contempt. Conviction for these reprehensible offenses should not be thwarted by the accused's emotional and psychological control over the victim. The offense in these cases, as in any other crime, is not just against the victim but against the laws, good order, peace and dignity of the state. When reliable evidence is available to sustain a conviction, it must not be excluded. Justice is blind, but not dumb.

I do not advocate that the necessity exception to the hearsay rule be applied routinely in any child molestation or incest case where the victim is unavailable to testify. Neither do I believe that the courts should rigidly refuse to apply an established and recognized exception to hearsay for reliable statements made by the victim to others in instances where necessity is coupled with "a circumstantial guaranty of the trustworthiness of the offered evidence." (Cit. and punctuation omitted.) *Higgs v. State*, supra at 607. By statute, the statement made by a child under the age of fourteen to another concerning sexual contact or physical abuse is admissible so long as the child is available to testify and "the court finds that the circumstances of the statement provide sufficient indicia of reliability." OCGA § 24-3-16.

The apparent purpose of this statute is to protect a young child from the trauma of appearing in court to testify to matters which would be understandably disturbing to the child. However, the admissibility of such evidence is based on its reliability. Is the statement of a child one day over the age of fourteen any less reliable or admissible into evidence? Certainly not. So long as the elements of necessity and trustworthiness are present, an exception to the hearsay rule is established.

The admission of the reliable statements of the victim to others as an exception to hearsay would not, in my opinion, violate the right of the accused to confront the witness, as set forth by the United States Supreme Court in *Coy v. Iowa,* (Case No. 86-6757, decided June 29, 1988). The Confrontation Clause of the Sixth Amendment to the United States Constitution confers the " 'right to *meet face to face* all those who appear and give evidence *at trial.' California v. Green,* 99 U. S. [149] at 175." Id., slip op. at 8. By citing *Dutton v. Evans,* 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970), the court in *Coy* expressly recognized the Confrontation Clause does not exclude out-of-court statements which are properly admitted as an exception to hearsay.

Finally, the ruling in *Parker v. State,* 162 Ga. App. 271 (5) (290 SE2d 578), relied upon in the majority opinion, is distinguishable and inapplicable. In that case, the victim, herself, testified. Therefore, the testimony of the victim's mother and a social worker concerning what the victim had told them about the incident was held to be inadmissible because it was admitted only to fortify or bolster the testimony of the victim. The court also rejected the argument that the victim's statements were admissible under the res gestae exception to hearsay. The court in *Parker* did not address the necessity exception to hearsay because, unlike the case now before us, there was no necessity for admitting the statements since the victim, herself, did testify.

In rejecting the necessity exception, the majority relies largely on the fact that the victim in this case was not unavailable to testify because she could have been compelled to testify. While such is the ruling now announced in this opinion (see Division 2 of the majority opinion, supra), the majority ignores the fact that at the time of trial, the trial judge was constrained in his dealings with the recalcitrant witness by this court's opinion in *Wynne v. State,* 139 Ga. App. 355 (3) (288 SE2d 378) (1976), stating that a judge had no authority to hold a witness in contempt for invoking the "personal or family disgrace" privilege. We cannot blame the trial judge for following this court's earlier opinion and conducting the trial as if the victim were unavailable. Under the *Wynne* case, the judge did exactly what he had to do.

3. The testimony of the four adults concerning statements made

to them by the victim was properly admissible as an exception to hearsay. As such, the testimony would have whatever probative value the jury would care to attach to it, and could support a verdict. See, e.g., *Higgs v. State*, 256 Ga. 606, supra. The testimony concerning the victim's statements, considered with the circumstantial evidence that defendant locked himself and the victim in her bedroom, the medical evidence that the victim's hymen had been ruptured, and the money, clothes, trips and gifts that the appellant provided the victim would authorize a rational trier of fact to find the appellant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Defendant argues the state failed to produce any evidence to support the conviction for cruelty to children. OCGA § 16-5-70 (b) provides: "Any person commits the offense of cruelty to children when he maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." Evidence of the victim's injury was provided by the testimony of her school counselor that the victim was "deeply concerned" about the problem and that defendant had told her she would be punished for telling about it. Malice and intent as elements of the offense of cruelty to children "may be found from all the circumstances of a case . . . ." *McGahee v. State*, 170 Ga. App. 227, 228 (316 SE2d 832) (1984). The evidence presented established the necessary elements to support the conviction for child cruelty, even if the majority is correct in its conclusion that the relationship between stepgrandparent and stepgranddaughter is not included in the incest statute.

I am authorized to state that Presiding Judge Deen, Presiding Judge McMurray and Judge Benham join in this dissent.

DECIDED JULY 29, 1988 —
REHEARING DENIED AUGUST 11, 1988 ▮▮▮▮▮▮▮▮▮▮

*W. Paschal Bignault, John R. Calhoun, Malcolm MacKenzie III, Kenneth D. Kondritzer*, for appellant.
*J. Lane Johnston, District Attorney*, for appellee.