A04A1500. WILMORE v. THE STATE.
(602 SE2d 343)

BLACKBURN, Presiding Judge.

Following his conviction for voluntary manslaughter and the denial of his motion for new trial, Ankedrick Deshed Wilmore appeals, contending that the trial court erred in failing to reopen voir dire so that he could conduct additional voir dire of a juror who had already been sworn in the case. For the reasons set forth below, we affirm.

The record shows that the first day of this four-day trial was devoted to jury selection. After the trial judge went through the statutory qualifying questions, Wilmore stated that he had no objections to the qualifications of the jurors. During voir dire by the State, the members of the jury pool were asked if any of them knew the victim or his family. Teresa Anderson, the juror whose impartiality Wilmore later questioned, stated that she knew the victim and his family and that one of her second cousins had dated the victim. When the State asked if she could be fair, she responded that she could. Wilmore's attorney also conducted a thorough voir dire. At the conclusion of the voir dire, Wilmore's attorney indicated that he had no challenges for cause. The trial judge then gave Wilmore and his attorney access to a room so that they could confer in private about the prospective jurors. When proceedings resumed, the trial judge asked both prosecution and defense if they had anything to discuss before seating the jury; both sides answered in the negative. The parties then completed the process of seating twelve jurors and one alternate. When the trial court asked again if there were any objections to the swearing of the jury, Wilmore stated that he had no objections and the jurors were sworn. Court was then recessed.

On the following morning, Wilmore raised an issue as to juror Anderson. Wilmore's counsel told the trial court that he had learned that morning that Anderson was a second cousin to the mother of Wilmore's children; he also related that "on a couple of occasions [Wilmore] has called over to speak with the mother of his children and that Teresa Ann Anderson was there and answered the phone and . . . on one occasion made a statement, that here goes that murderer. And on another occasion[ ], or other occasions . . . has called Mr. Wilmore a murderer." Wilmore's attorney then requested that he be allowed to question Anderson further about these circumstances.

The trial court denied Wilmore's request, stating that both parties were given opportunities to discuss any issues prior to jury selection and that jury selection had then proceeded; that Anderson "has indicated or said under oath that she would be in a position to be fair and it's the Court's opinion that the matter has been dealt with to the extent permitted by law and that it would be inappropriate at this juncture for the Court to re-open the voir dire process with this person having been seated as one of the jurors in the case."

Wilmore argues on appeal that the trial court erred in not reopening voir dire. We disagree.

Though Wilmore does not raise the issue on appeal, as a preliminary matter we note that the fact that Anderson was a second cousin to the mother of Wilmore's children did not disqualify her as a juror. Under OCGA § 15-12-163 (4), a juror must be set aside for cause if she

"is so near of kin to the prosecutor, the accused, or the victim as to disqualify the juror by law from serving on the jury." Jurors are disqualified by relationship if they "are related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law."[1] In this case, Anderson and the mother of Wilmore's children, as second cousins, are related within the sixth degree. See *Cheeks v. State.*[2] However, Anderson is not related by either consanguinity or affinity to Wilmore, who makes no claim that he is married to Anderson's cousin.

"Consanguinity is defined as: 'Kinship; blood relationship; the connection or relation of persons descended from the same stock or common ancestor. Consanguinity is distinguished from "affinity," which is the connection existing in consequence of a marriage, between each of the married persons and the kindred of the other.' " *Glisson v. State.*[3] It is clear that Anderson and Wilmore are not related by blood. And, because Wilmore is not married to Anderson's second cousin, he and Anderson are not related by affinity, despite the fact that he has fathered children with Anderson's cousin. Though we have found no Georgia cases which discuss at any length the relationship by affinity, decisions from other jurisdictions make clear that affinity is a legal relationship which results from marriage. See, e.g., *Smith v. Associated Natural Gas Co.;*[4] *Brooks v. Commonwealth;*[5] *Odom v. Odom.*[6] "[W]ithout marriage there can be no relation by affinity." *State v. Vidales.*[7] Thus, the dissolution of a marriage is held to sever a relation by affinity. See *Rothery v. State.*[8] Here, because there was no marriage between Wilmore and the mother of his children, a legal relationship by affinity was never created. Accordingly, Anderson and Wilmore were not related by affinity, and Anderson was not disqualified by her kinship.

Wilmore's real concern is with the statements he heard Anderson make about him, and he argues that the trial court erred in not reopening voir dire so that he could question Anderson further about these statements.

---

[1] OCGA § 15-12-135 (a).

[2] *Cheeks v. State*, 234 Ga. App. 446, 448, n. 19 (507 SE2d 204) (1998).

[3] *Glisson v. State*, 188 Ga. App. 152 (1) (372 SE2d 462) (1988).

[4] *Smith v. Associated Natural Gas Co.*, 7 SW3d 530, 535 (Mo. 1999).

[5] *Brooks v. Commonwealth*, 41 Va. App. 454, 460 (585 SE2d 852) (2003).

[6] *Odom v. Odom*, 32 Conn. L. Rptr. 116 (2002).

[7] *State v. Vidales*, 6 Neb. App. 163, 172 (571 NW2d 117) (1997).

[8] *Rothery v. State*, 757 S2d 1256, 1259 (Fla. 2000).

Under OCGA § 15-12-167,

[i]f known to a party or his counsel, any objections to a juror for cause shall be made before the juror is sworn in the case. After a juror has been found competent, no other or further investigation before triers or otherwise shall be had, provided that newly discovered evidence to disprove the juror's answer or to show him incompetent may be heard by the judge at any time before the prosecuting counsel submits any of his evidence in the case.

Wilmore's enumeration of error is based on his assertion that there was newly discovered evidence of Anderson's bias against him which authorized the trial court to reopen voir dire. The statute makes clear, however, that newly discovered evidence is evidence which was not known to a party or his counsel before the juror was sworn, but which comes to light after the juror has been found competent and before the prosecuting attorney submits any evidence. In this case, any evidence of the juror's bias was known to Wilmore well before Anderson was sworn. Wilmore himself allegedly heard Anderson make the statement "here goes that murderer" when he called and Anderson answered the phone. "Under these circumstances, [Wilmore's] challenge of the jury's impartiality was untimely. If known to a party or his counsel, such an objection must be made before the jurors are sworn." *Harris v. State.*[9]

Wilmore cites *Rhodes v. State*[10] and *Kelly v. State*[11] as support for his argument that the trial court should have reopened voir dire. Neither case is on point. In *Rhodes*, the juror's objectionable question was asked after the jury had been selected and sworn, and the question was immediately brought to the attention of the court and defense counsel. In *Kelly*, the alleged hostility of the juror was made manifest after she had been chosen for the jury. The *Kelly* court stated that, in that circumstance, the defendant could have moved for further voir dire before the jury was sworn; however, because the request to question the juror further came mid-trial after the State had presented most of its witnesses, the trial court properly denied the request as untimely. In the present case, unlike *Rhodes* and *Kelly*, Anderson's alleged objectionable remarks were made even before the trial began and did not, as we have explained, constitute newly discovered evidence.

---

[9] *Harris v. State*, 212 Ga. App. 120, 121-122 (2) (441 SE2d 255) (1994).
[10] *Rhodes v. State*, 264 Ga. 123 (441 SE2d 748) (1994).
[11] *Kelly v. State*, 255 Ga. App. 813 (567 SE2d 36) (2002).

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED JULY 21, 2004.

*Brad Gardner*, for appellant.
*Ralph M. Walke, District Attorney, Kelli Devaney-Jackson, Peter F. Larsen, Assistant District Attorneys*, for appellee.