**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 15, 2015**

# In the Court of Appeals of Georgia

A15A1011. JONES v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Anthony Jones appeals his conviction for three counts of aggravated child molestation, two counts of aggravated sexual battery, three counts of incest, two counts of child molestation, and one count of statutory rape. Jones contends that the evidence was insufficient to sustain the conviction and, in particular, to establish incest during the date range alleged in the indictment, and that the trial court erred in failing to merge certain convictions into others. For the reasons that follow, we affirm the convictions but vacate the sentences on two of the three incest counts and remand the case for resentencing.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant is no longer entitled to a presumption of innocence. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that in August 2007, ten-year-old J.A. and her two brothers came to live with their biological aunt and her husband, Jones. J.A.'s mother had recently passed away and her father had been imprisoned for molesting her when she was four.

In April 2008, Jones asked then-eleven-year-old J.A. if he could see her butt and inserted a gloved finger into her vagina. This happened several times, and Jones also put his mouth on her chest. J.A. told her aunt about the molestation, but Jones denied anything happened and J.A.'s aunt "sided with him," so J.A. told her that everything she had said was untrue. J.A. also told the assistant principal at her school, who contacted the Department of Family and Children Services, but while someone interviewed the child, no follow-up took place.

In February 2009, Jones and twelve-year-old J.A. began to develop what the child described as a "father/daughter, boyfriend/girlfriend ... type of relationship." J.A. talked to Jones about school and her future, and she testified that Jones told her "that he wanted to marry me and he wanted me to have like twenty kids. And I was going to get pregnant when I was sixteen and we're going to get married when I was sixteen." Jones gave J.A. a gold wedding band as an engagement ring in October 2009 while she was in seventh grade.

Jones began having sexual intercourse with J.A. when she was twelve or thirteen. He signaled for her to go into the bathroom by flicking her television on and off after midnight, where he had anal sex with her once or twice. He also ejaculated on her face, placed his penis in her mouth, and placed her mouth on his penis.

Late one evening in January 2011, Jones told J.A.'s brother to make noise doing the dishes in the kitchen, which was Jones's job, while he cleaned the microwave in the pantry. Jones had asked the brother to do this before, although one time Jones left the cleaning cloth in the kitchen and was gone "for a long time and came out sweating." On this evening, the aunt came downstairs while Jones and J.A. were having sex in the living room. J.A. tried to hide behind some boxes, but her aunt saw her, and J.A. ran out the door to the garage, pulling up her pants as she went. Both J.A. and Jones admitted to the aunt that they had been having sex, and upon J.A.'s prompting, the aunt observed that Jones had petroleum jelly on his penis. J.A. also showed her aunt the engagement ring, which the aunt kept and later gave to a police detective. The State introduced the ring into evidence during trial.

The aunt did not immediately report Jones but made him move out of the house. He continued having intercourse with J.A. anyway, picking her up five or six times from her school bus stop and driving her to a Publix parking lot, where they had

sex in the back seat of his car. The aunt saw J.A. get into Jones' car one day and called him to demand he bring her home, which he did. On February 14, 2011, the aunt finally called 911 and reported the abuse. Jones told the investigating officer that J.A. made these allegations because she was afraid she would have to go live in a foster house. Jones's wife, he explained, thought something was going on between Jones and J.A. Additionally, Jones said, the aunt was "fed up with the disrespect" showed by J.A. and her brothers.

1. Jones first enumerates as error the trial court's denial of his motion for a directed verdict of acquittal on all eleven counts of the indictment, arguing that the State did not meet its threshold evidentiary burden. We review the trial court's denial of Jones' motion for a directed verdict as we would a claim that the evidence was insufficient to sustain the convictions, and determine, based on the evidence presented, whether a rational finder of fact could have found the accused guilty of the charged offenses beyond a reasonable doubt. *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001); OCGA § 17-9-1 (a).[1]

---

[1] OCGA § 17-9-1 (a) provides:
Where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or "not guilty" as to the entire offense or to some particular count or offense, the court may direct the verdict of acquittal

Jones asserts that State failed to meet its burden because a thorough forensic examination of J.A. revealed nothing remarkable or abnormal about the child's physical health. Jones contends that it "seem[s] dubious" that the exam revealed no physical evidence, given the allegations that J.A. and Jones had an ongoing sexual relationship.

As Jones concedes, none of the crimes alleged in the indictment charged Jones with causing any physical injuries, nor did they require corroborating medical evidence. See *Mangham v. State*, 291 Ga. App. 696, 697 (662 SE2d 789) (2008) (explaining that medical evidence is not required to corroborate testimony of the victim of aggravated child molestation); see also *Lee v. State*, 306 Ga. App. 144, 145 (1) (701 SE2d 582) (2010) (in aggravated sexual battery case, "penetration of the victim's sexual organ need only be slight and a physical injury need not be shown"). Further, the testimony of a single witness is sufficient to prove the charged crimes. See OCGA § 24-14-8; *Vaughn v. State*, 301 Ga. App. 391, 392 (687 SE2d 651) (2009). Georgia law does not require corroboration of a victim's testimony to prove child molestation or aggravated sexual battery. Id. at 393, n. 1.; *Boyd v. State*, 286 Ga.

to which the defendant is entitled under the evidence and may allow the trial to proceed only as to the counts or offenses remaining, if any.

5

App. 460, 461 (649 SE2nd 589) (2007); *Honeycutt v. State*, 245 Ga. App. 819, 819-820 (1) (538 SE2d 870) (2000).

Jones also asserts that J.A.'s testimony was not believable, and describes her tales of clandestine sex with Jones inside the family home as "surreal and too fantastic," challenging her credibility given her previous problems and conflicts with her aunt. However, the determination of J.A.'s credibility is a matter entirely within the jury's province. *Johnson v. State*, 273 Ga. 872, 874 (2) (548 SE2d 292) (2001); see also *Moody v. State*, 206 Ga. App. 387, 391 (5) (425 SE2d 397) (1992) (weight to be accorded to victim's statements in light of inconsistencies was jury issue); *Levitt v. State*, 201 Ga. App. 63 (1) (410 SE2d 170) (1991) (defendant's argument that victim's confused and inconsistent testimony was unreliable went to her credibility, an issue within the jury's province).

Here, J.A. testified that Jones repeatedly had sexual intercourse and engaged in other sexual acts with J.A., his niece, who was younger than sixteen. Jones's wife testified that Jones admitted having sex with J.A. As the State's evidence was sufficient for any rational trier of fact to find Jones guilty beyond a reasonable doubt of the crimes alleged in the indictment, the trial court properly denied his motion for a directed verdict.

6

2. Jones was charged with three counts of incest: Count 5 for engaging in sexual intercourse with his niece between February 1, 2010, and December 30, 2010, Count 6 for engaging in sexual intercourse with his niece between December 31, 2010, and February 12, 2011, and Count 7 for engaging in sodomy with his niece between May 10, 2010, and December 20, 2010. Jones argues that the State presented insufficient evidence to prove that he committed incest within the specific date range alleged in Count 5 of the indictment. While we disagree with Jones that the date range was a material averment of the indictment, for other reasons we conclude that the trial court erred in sentencing Jones on both Count 5 and Count 6.

The acts alleged in Counts 5 and 6 were the same, and both counts averred that the exact dates of the offenses were unknown to the grand jury but that each act was "separate and distinct from the act alleged" in the other count.[2] The trial court charged the jury that the indictment did not state that the date of the offense was a material element of the crime, and that it was sufficient that the State show that the offense occurred within the seven years before the indictment was filed regardless of the date listed on the indictment. Neither party excepted to the charge.

---

[2]Count 5 additionally alleged that the victim was younger than 14, but that additional element is not relevant to our analysis.

If "the counts in the [indictment] are identical except for the dates alleged, and the dates were not made essential averments, only one conviction can stand." (Citation and punctuation omitted.) *Daniels v. State*, 320 Ga. App. 340, 343 (2) (739 SE2d 773) (2013).

> This rule applies in prosecutions for multiple sexual assaults against child victims despite the impracticality of treating the dates specified in indictments as material averments. And the mere fact that a different date is charged in each count will not of itself make the indictment into a special one where the averment as to date is not particularized.

(Citations and punctuation omitted.) Id. See *Martin v. State*, 73 Ga. App. 573, 576 (3) (37 SE2d 411) (1946) (absent averment that dates were material elements, defendant convicted of 15 counts for running a lottery may be sentenced for only one general offense).

While we have previously held that the State made time an essential averment by alleging the same conduct on different dates in multiple counts,[3] the trial courts in those cases apparently did not specifically charge the jury that the dates were *not* material averments of the crimes, as the trial court did in this case. *Daniels*, 320 Ga.

---

[3]See, e.g., *Salley v. State*, 199 Ga. App. 358, 362 (4) (405 SE2d 260) (1991), *Hamilton v. State*, 167 Ga. App. 370, 371 (306 SE2d 673) (1983).

App. at 343-344 (2). The State must make an election when it charges a defendant with multiple counts of the same crime: if the State makes the dates material averments and introduces sufficient evidence to prove the dates, it may obtain multiple convictions; if the State does not make the dates material averments, then it has a much broader time frame within which to prove the crimes were committed, but it is limited to a single conviction.

Int his case, the dates alleged in Counts 5 and 6 were not made material averments of the indictment, and therefore Jones may be sentenced on only one of the two counts. We therefore vacate the sentences on those counts and remand for resentencing.

3. Jones also contends that the trial court should have merged Counts 5 and 6 into the statutory rape count for sentencing purposes. While we have concluded in the previous division that Jones may be sentenced on only one of these two counts, the question remains whether the remaining count of incest for sexual intercourse merges into the statutory rape count. It does not.

Under OCGA § 16-1-7 (a), when the same conduct may establish the commission of multiple crimes, the accused may not be convicted of crimes that are included in other crimes. To determine whether one crime is included in another, the

9

Georgia Supreme Court has adopted the "required evidence" test, which reflects the statutory language of OCGA § 16-1-6 (1). *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006). Under both the statute and the required evidence test, one crime is "included in" the other if it is "established by proof of the same or less than all the facts ... than is required to establish the commission of [the other crime]." Id. at 213.

While Jones argues that all of the elements of incest are included in the elements of statutory rape, they are not. To establish the crime of statutory rape, the State was required to prove that Jones engaged in sexual intercourse with a person younger than 16 who was not his spouse. OCGA § 16-6-3 (a). To establish the crime of incest, the State was required to prove that the victim was related to the defendant by blood or marriage within a certain degree of consanguinity, including that of uncle and niece. OCGA § 16-6-22 (a) (6). On the statutory rape charge, the State introduced evidence that the victim was younger than 16, a fact that was not required to prove incest. In Counts 5 and 6 charging Jones with incest for having sexual intercourse with his niece, the State introduced evidence that Jones' wife was the victim's aunt, and thus that the victim was Jones' niece by marriage, a fact that was not required to prove statutory rape. Thus, the crime of committing incest by having sexual intercourse with a niece was not established by proof of same or fewer than all the

10

facts required to establish statutory rape, and the offenses do not merge as a matter of law. See *Drinkard*, 281 Ga. at 213 (crimes of statutory rape and incest are not included in crime of rape because each offense was established by proof of a fact not required to prove either of the other two offenses); *Dew v. State*, 292 Ga. App. 631, 635 (3) (665 SE2d 715) (2008) (offense of rape, requiring proof of force, and offense of incest, requiring proof of consanguinity, do not merge).[4]

4. Finally, Jones contends that his conviction for committing incest by engaging in an act of sodomy with his niece should merge into his three aggravated child molestation convictions "as a matter of fact," contending that, "as alleged in the indictment, proof of the incest also factually established any of the aggravated sodomy counts."

In Counts 1, 2, and 3, the State charged Jones with aggravated child molestation involving three different acts that constitute sodomy under OCGA § 16-6-2 (a), which defines the offense as "involving the sex organs of one person and the mouth or anus of another." The State also charged Jones with committing the act of incest by engaging with sodomy with his niece, although it did not allege the

---

[4]While Jones cites *McCranie v. State*, 157 Ga. App. 110 (276 SE2d 263) (1981), for the proposition that the offense of incest is included in the offense of statutory rape, that case was specifically overruled in *Drinkard*, 281 Ga. at 217, n. 38.

11

manner in which the act of sodomy was committed. Jones thus argues that "proof of the incest also factually established any of the aggravated sodomy counts," and therefore the incest conviction merged with them as a matter of law.

As discussed in the previous division, as of 2006, Georgia's appellate courts no longer use the "actual evidence" test to determine whether offenses merge. Under *Drinkard*, 281 Ga. at 217, we apply the "required evidence" test and consider whether the offenses required proof of different facts. Child molestation requires proof that the victim was younger than 16; incest requires proof on consanguinity, and these required elements do not overlap. Accordingly, the trial court did not err in failing to merge the conviction for incest by committing sodomy on a niece with the three aggravated child molestation convictions.

In summary, we affirm the judgments of conviction on all eleven counts, but vacate the sentence as to Counts 5 and 6 and remand for resentencing in accordance with this opinion.

*Judgment of conviction affirmed; sentence vacated in part and case remanded with direction. Ray and McMillian, JJ., concur.*

12