**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 26, 2026**

# In the Court of Appeals of Georgia

A25A1663. THE STATE v. WRIGHT.

DAVIS, Judge.

Daniel Wright was charged with incest under OCGA § 16-6-22(a). The trial court dismissed the indictment, finding that Wright was not blood-related to the victim. Because we hold that Wright's relationship to the victim is covered by the incest statute, we reverse.

According to the record, Wright is the husband of the victim's blood-related aunt. In October 2023, a grand jury indicted Wright on one count of incest under OCGA § 16-6-22, alleging that the victim was his niece and that he had sexual intercourse with her in April 2021, as well as one count of invasion of privacy under OCGA § 16-11-62. After the jury was sworn but before opening statements, Wright

filed a motion to dismiss the indictment and general demurrer, arguing that the relationship between himself and the victim was not covered by the incest statute.

The trial court dismissed the indictment, finding that there was no consanguinity, or blood relationship, between Wright and the victim, and that the statute did not expressly prohibit the relationship. The State subsequently entered into a negotiated plea agreement with Wright, reducing the second charge against him to a misdemeanor simple assault under OCGA § 16-5-20. The State then filed a timely notice of appeal under OCGA § 5-7-1(a)(1).

1. As an initial matter, Wright argues that we lack jurisdiction to consider this appeal. He contends that jeopardy had attached when the court granted his general demurrer and that the State later entered into a plea agreement.

Under OCGA § 5-7-1(a)(1), the State can appeal "[f]rom an order, decision, or judgment setting aside or dismissing any indictment ... or any count thereof[.]" Notably missing from this subsection is the requirement that the defendant not be placed in jeopardy, which is a requirement for other State appeals, such as appeals from orders on motions to suppress, motions to recuse, and pleas in bar. See OCGA §§ 5-7-1(a)(3), (4), (5), and (9). "Well-settled principles of statutory construction

provide that expressio unius est exclusio alterius (the expression of one thing implies the exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)." *Gordon v. State*, 327 Ga. App. 774, 777 (761 SE2d 169) (2014) (quotation marks omitted). Because the requirement that the defendant not be placed in jeopardy does not appear in OCGA § 5-7-1(a)(1), yet does appear in other sections of the same statute, it is clear that the General Assembly did not intend this requirement to apply to OCGA § 5-7-1(a)(1). Nor does Wright cite to any cases limiting the State's appeal from a trial court's dismissal of one count of the indictment to the time before jeopardy attaches. He only cites to cases which fall within the exclusions found in OCGA §§ 5-7-1(a)(3), (4), (5), or (9). Accordingly, we have jurisdiction to consider the State's appeal.

2. On appeal, the State argues that the uncle-niece relationship between Wright and the victim is covered by the incest statute. It contends that the ordinary definition of "uncle" includes "[t]he husband of one's aunt or uncle." It also argues that the history of the statute prohibits the type of sexual relationship found in this case. We agree.

"We review a trial court's ruling on a general demurrer de novo in order to determine whether the allegations in the indictment are legally sufficient." *State v. Davis*, 339 Ga. App. 214, 215 (793 SE2d 507) (2016) (quotation marks omitted). In analyzing potential conduct under the incest statute, we keep in mind that, although the alleged acts may be "loathsome and disgusting[, that] does not justify us in reading into the statutory prohibition something which the General Assembly either intentionally or inadvertently omitted." *Glisson v. State*, 188 Ga. App. 152, 153 (372 SE2d 462) (1988).

Under the version of the incest statute at the time of the offense, OCGA § 16-6-22(a) (2021) provided:

> A person commits the offense of incest when such person engages in sexual intercourse or sodomy, as such term is defined in Code Section 16-6-2, with a person whom he or she knows he or she is related to either by blood or by marriage as follows:
> > (1) Father and child or stepchild;
> > (2) Mother and child or stepchild;
> > (3) Siblings of the whole blood or of the half blood;
> > (4) Grandparent and grandchild of the whole blood or of the half blood;

(5) Aunt and niece or nephew of the whole blood or of the half blood; or

(6) Uncle and niece or nephew of the whole blood or of the half blood.

In statutory interpretation cases such as this, it is well settled that a statute draws its meaning from its text. When interpreting a statute, we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.

*State v. Coleman*, 306 Ga. 529, 530 (832 SE2d 389) (2019) (citation modified).

Starting first with the "ordinary meaning" of the statute's words, see *Higdon v. State*, 291 Ga. 821, 824(2)(a) (733 SE2d 750) (2012), the definition of "uncle" is: "a: the brother of one's father or mother" and "b: the husband of one's aunt or uncle." Merriam-Webster's Online Dictionary (Jan. 5, 2026), https://www.merriam-webster.com/dictionary/uncle. Thus, the ordinary or plain definition includes the relationship at issue.

We next turn to statutory history and this Court's interpretations of the statute. In 1968, the General Assembly passed the following version of the statute:

A person commits incest when he engages in sexual intercourse with a person to whom he knows he is related, either by blood or by marriage as follows:

     (a) father and daughter or stepdaughter;

     (b) mother and son or stepson;

     (c) brother and sister of the whole blood or of the half blood;

     (d) grandparent and grandchild;

     (e) aunt and nephew; or

     (f) uncle and niece.

Ga. L. 1968, p. 1249, § 1.

The trial court here relied heavily on the 1988 case *Glisson v. State*, 188 Ga. App. 152 (372 SE2d 462) (1988), which interpreted the 1968 version of the incest statute. In *Glisson*, the defendant was the victim's "stepgrandfather," that is, the victim's stepfather's father. Id. at 152 (1). This Court held that the relationship was not covered by the incest statute, reasoning that the statute must be strictly construed against the State and that the statute did not include a prohibition to the stepgrandfather-stepgranddaughter sexual relationship. Id. at 152-153 (1). The Court

6

distinguished consanguinity, those related by blood, and affinity, those related by marriage. Id. at 152 (1). It held that the incest statute, which prohibited certain degrees of consanguinity, could not by implication be extended to degrees of affinity, and only included "certain persons related only by affinity." Id. (emphasis omitted).

In 2007, this Court considered whether the incest statute applied to an uncle who was not blood-related to his niece. In *Chestnut v. State*, the victim was born to the defendant's brother's wife. 287 Ga. App. 693, 693 (652 SE2d 596) (2007). The victim was not biologically the brother's child, but the brother never challenged paternity. Id. at 694. This Court held that the defendant could be convicted under the incest statute. Id. It distinguished *Glisson* because the defendant and the victim "were uncle and niece, and that relationship [was] specifically included in the Georgia incest statute." Id.

In 2014, this Court considered whether a sexual relationship between the victim and her half-uncle was prohibited by the incest statute. *Gordon*, 327 Ga. App. at 777 (1). The defendant and the victim's mother were half-siblings. Id. This Court reasoned that the relationship was not expressly prohibited by the statute, since the statute did not refer to uncle and niece of the half blood. Id. The Court thus reversed

the defendant's incest conviction. Id. In response to this holding, the General Assembly amended the incest statute to prohibit, in relevant part, sexual relationships between "[u]ncle and niece or nephew of the whole blood or of the half blood." OCGA § 16-6-22(a)(6) (2015).

In 2015, in considering the version of the incest statute before the amendment above, this Court examined whether the trial court erred in denying the defendant's motion for a directed verdict, which included charges of incest. *Jones v. State*, 333 Ga. App. 796, 799(1) (777 SE2d 480) (2015). The defendant was the husband of the victim's biological aunt. Id. at 797. This Court affirmed the court's denial of the directed verdict. Id. at 799(1). In considering whether the statutory rape count merged into the incest count, this Court noted that, to prove the crime of incest, the State had to prove "that the victim was related to the defendant by blood *or marriage* within a certain degree of consanguinity, including that of uncle and niece." Id. at 801(3) (emphasis supplied). The Court further noted that "the State introduced evidence that [the defendant's] wife was the victim's aunt, and thus that the victim was [the defendant's] niece by marriage[.]" Id. at 801(3).

Considered together, the incest statute encompasses the relationship as found in this case. OCGA § 16-6-22 (a) (6) prohibits sexual activity between certain relationships "either by blood *or by marriage*." Wright is the victim's uncle by marriage; thus, a sexual relationship is prohibited under the statute. Wright need not be blood-related to the victim. This Court has upheld incest convictions both where there was no blood relationship to the victim and where the defendant was only related by marriage to the victim. See *Jones*, 333 Ga. App. at 799 (1); *Chestnut*, 287 Ga. App. at 694.

Wright admits that he would have been convicted under the pre-2015 version of the statute. However, he contends that the 2015 addition of the phrase "of the whole blood or of the half blood" to the phrase "uncle and niece or nephew" now requires a blood relationship previously not required in the statute. But this reading of OCGA § 16-6-22 ignores that the addition of this qualifier was a response to this Court's holding in *Gordon*, where the Court held that half-uncles were not covered by the statute. In interpreting statutes, the General Assembly has directed us to consider the "old law, the evil, and the remedy." OCGA § 1-3-1(a). Thus, the General Assembly in 2015 merely enlarged the statute to include half-uncles. It did not exclude

9

uncles by marriage; indeed, it retained the language that the relationship be either "by blood or by marriage." OCGA § 16-6-22 (a) (2015). Wright's reading of the statute would render this phrase mere surplusage. See *State of Ga. v. Free At Last Bail Bonds*, 285 Ga. App. 734, 737 (647 SE2d 402) (2007) (Courts must interpret statutes "as a whole, striving … to avoid constructions that make some language mere surplusage.") (citation modified).

Because Wright was the victim's uncle by marriage of the whole blood, his sexual relationship with the victim was prohibited by statute. The trial court thus erred in dismissing the indictment, and accordingly we reverse.

*Judgment reversed. Rickman, P. J., and Gobeil, J., concur.*