**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2023**

# In the Court of Appeals of Georgia

A23A0035. HAMMOND v. STATE.

A23A0036. STATE v. HAMMOND.

HODGES, Judge.

A jury convicted Andrew Hammond of four counts of child molestation against S. H. Three of those counts related to touching S.H.'s vagina on three different occasions, and the fourth count related to touching S.H's breasts on one of the same occasions. Hammond was initially sentenced as a recidivist, but when a correction was made to his sentence, the box for recidivist sentencing was not checked. The trial court eventually merged all of Hammond's convictions related to touching S. H.'s vagina into one conviction and resentenced him as a recidivist. Hammond appeals the trial court's sentence on the ground that it violates double jeopardy by sentencing him to a longer sentence than the prior sentence imposed due to his renewed treatment as

a recidivist. He also contends that he received ineffective assistance of trial counsel. The State cross-appeals, contending that the trial court erred in merging Hammond's convictions. We have consolidated the cases for purposes of issuing an opinion, and for the reasons that follow, we affirm the judgment in both appeals.

"On appeal, a criminal defendant is no longer presumed innocent, and we review whether the evidence presented at trial, when viewed in the light most favorable to the jury's verdicts, enabled the jury to find the defendant guilty beyond a reasonable doubt of the crimes of which [he] was convicted." *Fitts v. State*, 312 Ga. 134, 141 (3) (859 SE2d 79) (2021).

So viewed, the evidence demonstrates that Hammond was married to S. H.'s grandmother and that S. H. viewed him as a grandfather. When S. H. was twelve years old, she, her father, and her sister moved in with her grandmother and Hammond. Hammond would babysit S. H. and her sister, M. H., nearly every Friday while her father and grandmother were away. Hammond, S. H., and M. H. would often watch movies in the living room. In the fall of 2013, S. H. fell asleep in her pajamas on a couch in the living room while watching a movie. She woke up to Hammond touching her vagina and breast underneath her clothes and this lasted for

about three to four minutes. Hammond promised it would never happen again and told her not to tell anyone or he would hurt her father.

In November 2014, Hammond was again babysitting S. H. and her sister. She fell asleep while watching a movie and wearing the same pajamas. S. H. again woke up to Hammond touching the skin of her vagina and breasts. That night, she awakened M. H. to tell her what happened, but M. H. was not fully awake and did not believe S. H. was serious. The next day, S. H. repeated the allegation to M. H., who told her that she should tell their father. S. H. did not tell her father because she was scared Hammond would hurt him.

In December 2014, Hammond again babysat S. H. and her sister. S. H. was wearing the same pajamas and again fell asleep on the couch. Again, she woke up to Hammond touching her vagina and breasts underneath her pajamas. In early 2015, S. H. was talking to a male friend on the phone after she was supposed to be in bed, and she was going to disclose Hammond's conduct to him. Her father caught her on the phone and was about to punish her for disobeying the rules, and she then disclosed Hammond's abuse. S. H. did not feel comfortable disclosing the details to her father, so she spoke to her godmother about them.

S. H.'s father contacted the police and a forensic interview was performed on

S. H. Hammond was indicted for committing:

Count 1: [T]he offense of **CHILD MOLESTATION** . . . **between the 1st day of August, 2013, and the 31st day of December, 2013, the exact date of the offense being unknown to the Grand Jury**, did commit an immoral indecent act to [S. H.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of himself, or said child, by touching her *on or about the vagina* with his hand[.]

Count 2: [T]he offense of **CHILD MOLESTATION** . . . **between the 28th day of November, 2014, and the 29th day of November, 2014, the exact date of the offense being unknown to the Grand Jury**, did commit an immoral indecent act to [S. H.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of himself, or said child, by touching her *on or about the vagina* with his hand[.]

Count 3: [T]he offense of **CHILD MOLESTATION** . . . **between the 4th day of December, 2014, and the 6th day of December, 2014, the exact date of the offense being unknown to the Grand Jury**, did commit an immoral indecent act to [S. H.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of himself, or said child, by touching her *on or about the vagina* with his hand[.]

Count 4: [T]he offense of **CHILD MOLESTATION** . . . **between the 28th day of November, 2014, and the 29th day of November, 2014, the exact date of the offense being unknown to the Grand Jury**, did

commit an immoral indecent act to [S. H.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of himself, or said child, by touching her *on or about her chest area* with his hand[.]

(Emphasis in original and supplied.)

Hammond was tried before a jury and convicted of all four charges. Due to three prior felony convictions, Hammond was sentenced as a recidivist pursuant to OCGA § 17-10-7 (a) and (c). The final disposition form for his sentence was entered on March 1, 2018 and provided that he was being sentenced as follows:

Count 1 - 20 years to serve 15;

Count 2 - 20 years to serve 15, consecutive to Count 1;

Count 3 - 20 years to serve 10, consecutive to Count 1; and

Count 4 - 20 years to serve 15, concurrent to Count 1.

The final disposition form provided that Hammond would be sentenced to a total of 60 years to serve 40. It also erroneously provided that the sentence was the result of both a negotiated guilty plea and a jury trial.

The Department of Corrections sent correspondence to the trial court informing the court that the aggregate sentence identified did not match the time sentenced.

5

Specifically, the Department notified the trial court that because both Counts 2 and 3 ran consecutive to Count 1, the aggregate time was 40 years to serve 30 instead of 60 years to serve 40. The trial court resentenced Hammond, entering the new sentence nunc pro tunc "to correct consecutive sentencing for Count 3," as follows:

Count 1 - 20 years to serve 15;

Count 2 - 20 years to serve 15, consecutive to Count 1;

Count 3 - 20 years to serve 10, consecutive to Count 2; and

Count 4 - 20 years to serve 15, concurrent to Count 1.

The aggregate sentence was correctly identified as 60 years to serve 40, but the form again incorrectly identified the sentence as the result of both a negotiated plea and a jury trial. This time, the box for recidivist sentencing was not checked.

Hammond timely moved for a new trial and ultimately included a claim that his convictions on Counts 1-3 should merge. The trial court agreed, merged those counts, and resentenced Hammond. Hammond's second amended final disposition form indicated a sentence as follows:

Count 1 - 20 years to serve 19;

Count 2 - merged with Count 1;

Count 3 - merged with Count 1; and

Count 4 - 20 years to serve 15, consecutive to Count 1.

The aggregate sentence was correctly identified as 40 years to serve 34 and it correctly identified the convictions as solely the result of a jury trial. This time, the boxes for recidivist sentencing pursuant to OCGA § 17-10-7 (a) and (c) were again checked. The trial court rejected Hammond's other grounds for a new trial.

In Case No. A23A0035, Hammond appeals his sentence, claiming the trial court was unable to amend his sentence to treat him as a recidivist and that he received ineffective assistance of trial counsel. In Case No. A23A0036, the State appeals the trial court's merger of Hammond's convictions. For the reasons that follow, we affirm in both appeals. We address the claims in the State's cross-appeal first.

*Case No. A23A0036*

1. In a single enumeration of error, the State contends that the trial court erred in merging Counts 2 and 3 into Count 1 because Hammond's double jeopardy rights were not violated. We disagree.

7

Hammond was convicted of three counts of child molestation for touching S. H.'s vagina with his hand. The indictment identified three different respective periods of time for when these acts occurred, all within the statute of limitations. The indictment specifically stated that the exact dates of the offenses were unknown to the grand jury and did not state that the dates alleged were material averments of the indictment.

As our Supreme Court recently stated, "merger questions may . . . arise when a defendant is charged with multiple counts of the same crime." (Citation and emphasis omitted.) *Dukes v. State*, 311 Ga. 561, 571 (4) (858 SE2d 510) (2021).

> Generally speaking, when proving the time an offense was committed, the State is not restricted to proof of the date alleged in the indictment, but is permitted to prove its commission on any date within the statute of limitations. Where, however, the indictment specifically alleges the date of the offense is material, the accused may be convicted only if the State's proof corresponds to the date alleged. Indeed, the [S]tate must prove all material allegations in an indictment which describe the offense or the particular manner in which the offense was committed.

(Citations and punctuation omitted.) Id. at 571-572 (4). "[S]uch an averment of materiality is necessary to overcome a plea of double jeopardy to a subsequent charge of committing the same act on a separate date." (Citation and punctuation omitted.)

8

*Thomas v. State*, 352 Ga. App. 640, 642 (1) (a) (835 SE2d 640) (2019). This is because, without an averment of materiality, the charges are legally identical. *Dukes*, 311 Ga. at 572 (4). Accordingly, when an indictment does not explicitly specify that the date of the offense is material, "only one conviction can stand." *Thomas*, 352 Ga. App. at 643 (1) (a).

The State candidly admits that existing precedent required the trial court to merge Hammond's convictions, but asks us to revisit that precedent, particularly in the context of crimes committed against children who may have difficulty remembering the precise date of the offense. We are mindful of the challenge this poses for prosecution, but

> [t]his rule [of merger] applies in prosecutions for multiple sexual assaults against child victims despite the impracticality of treating the dates specified in indictments as material averments. And the mere fact that a different date is charged in each count will not of itself make the indictment into a special one where the averment as to date is not particularized.

(Citation omitted.) *Jones v. State*, 333 Ga. App. 796, 800 (2) (777 SE2d 480) (2015) (holding that multiple convictions for incest must merge even though the victim

testified to multiple events of sexual intercourse with her uncle because the dates alleged in the indictments were not averred to be material).

Long-standing precedent in this Court and in the Supreme Court does not permit us to abridge a defendant's double jeopardy protections. See *Thompson v. State*, 358 Ga. App. 553, 557 (1) (855 SE2d 756) (2021) ("Although Thompson argues that this well settled authority should no longer be followed in Georgia, we are bound by the opinions of the Supreme Court."). Accordingly, the trial court did not err in merging Counts 2 and 3 into Count 1.

*Case No. A23A0035*

2. Hammond contends that the trial court erred in denying his motion for new trial because he received ineffective assistance of trial counsel due to his counsel's failure to object to two witnesses providing allegedly bolstering testimony. We disagree.

Georgia law is clear that

[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). If an appellant fails to

meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. . . . Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential. The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result. Indeed, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

(Citations and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188, 192-193 (4) (825 SE2d 578) (2019). Here, Hammond takes issue with the failure to object to testimony by two witnesses, which we will address in turn.

*a. Testimony of M. H.*

At trial, M. H. testified about S. H.'s disclosure of Hammond's abuse. At one point she testified that she thought S. H. must be telling the truth, and not "just kidding," because S. H. told her father about the abuse. Pretermitting whether this testimony constitutes improper bolstering, as alleged by Hammond, it was part of a reasonable trial strategy by Hammond's trial counsel to not object to the testimony. At the motion for new trial hearing, trial counsel testified that she did not object to M. H.'s testimony because she did "not want [ ] to prolong [the witness'] testimony." "Decisions as to whether to interpose certain objections fall within the realm of trial tactics and strategy and usually provide no basis for reversal of a conviction." (Citation and punctuation omitted.) *Goldey v. State*, 289 Ga. App. 198, 199 (2) (a) (656 SE2d 549) (2008); see also, e.g., *Leggett v. State*, 331 Ga. App. 343, 349 (5) (c) (771 SE2d 50) (2015) (finding trial strategy to be reasonable when defense counsel did not object to hearsay testimony of a child witness out of concern for alienating the jury). Accordingly, we find that Hammond's trial counsel was not ineffective for failing to object to M. H.'s testimony, and this provided no basis for granting him a new trial.

   b. *Testimony of Leslie Diehl*

12

At trial, forensic examiner Leslie Diehl testified about the interview she conducted of S. H. She testified that S. H.'s disclosure was consistent with an outcry of child sexual abuse. She also testified that she did not see any "red flags" in S. H.'s responses, which she identified as signs of coaching the child or high suggestibility. This also provides no basis for a finding of ineffective assistance of trial counsel. "This Court has repeatedly held that a witness does not improperly bolster a victim's credibility by testifying that the witness saw no evidence of coaching." (Citation and punctuation omitted.) *Ward v. State*, 353 Ga. App. 1, 7 (2) (b) (836 SE2d 148) (2019). Trial counsel does not act deficiently by failing to make a meritless objection. *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010).

3. Hammond also contends that the trial court impermissibly increased his sentence in violation of double jeopardy protections by making his post-merger sentence a recidivist sentence. Again, we disagree.

As discussed above, Hammond was initially sentenced as a recidivist pursuant to OCGA § 17-10-7 (a) and (c). Those code provisions provide:

> (a) Except as otherwise provided in subsection (b) or (b.1) of this Code section, any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state

13

would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution *shall be sentenced* to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

. . .

(c) Except as otherwise provided in subsection (b) or (b.1) of this Code section and subsection (b) of Code Section 42-9-45, any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state *shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence* of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

(Emphasis supplied.)

Accordingly, when originally sentenced, Hammond would have been required to receive the maximum sentence for each conviction, which could be subject to

14

probation in the discretion of the trial court, and would have been required to serve every day of the confinement portion of his sentence. At no point below or on appeal has Hammond challenged the prior convictions which subjected him to recidivist treatment.

In Hammond's original sentence, the aggregate sentence was improperly calculated by the trial court. When the trial court amended his sentence to correct the miscalculation of the aggregate sentence, it failed to check the boxes indicating that it was a recidivist sentence. When Hammond was successful in obtaining merger of Counts 2 and 3, however, this mistake was discovered and corrected.

Hammond contends that this was a violation of his protection against double jeopardy because it increased his sentence after he had started serving it in that it eliminated the possibility for parole, which he alleges the first amended sentence provided him. Pretermitting whether this is an accurate characterization of his ultimate sentence,[1] Hammond has shown no error.

Our Supreme Court has been clear that a "defendant may be resentenced after the original sentence has begun being served, so long as (a) such resentencing is

_____

[1] Due to the merger, Hammond's aggregate sentence shrunk from 60 years to serve 40 to 40 years to serve 34.

15

allowed by law, and (b) the defendant has no reasonable expectation in the finality of the original sentence." (Citations omitted.) *Wilford v. State*, 278 Ga. 718, 719-720 (606 SE2d 252) (2004) (finding that defendant had no expectation in the finality of his sentence when the first offender statute permitted revocation of first offender status). Here, the first amended sentence was void due to the fact that Hammond was not sentenced as a recidivist. OCGA § 17-10-7 (a) and (c) are mandatory in nature. "[A] convicted defendant, like [Hammond], has neither a vested right to nor a reasonable expectation of finality as to a pronounced sentence which is null and void." (Citation and punctuation omitted.) *Parrott v. State*, 312 Ga. 580, 582 (3) (864 SE2d 80) (2021) (finding no double jeopardy violation when defendant's punishment on resentencing was more severe than the punishment had been in his previously void sentence); see also *Strickland v. State*, 301 Ga. App. 272, 273-274 (687 SE2d 221) (2009) ("Though it is undisputed that [the defendant] had already begun serving her sentence when she was resentenced, it is inconsequential because the fine was statutorily mandated and the sentence as initially imposed was void. Thus, the resentence did not result in an increase in [the defendant's] sentence because the trial court merely corrected the sentence in accordance with [the applicable law].") (citation and punctuation omitted). Hammond's enumeration is without merit.

*Judgments affirmed. Miller, P. J., and Mercier, C. J., concur.*